**ALASKA TRAMS CORPORATION,**
**a/k/a Alaska Trams, Inc.,**
**Appellant,**

**v.**

**ALASKA ELECTRIC LIGHT & POWER, an Alaska Corporation; William A. Corbus; Does I–XX; and an Aerial Right-Of-Way, an Easement 1300 Linear Feet in Length, More or Less, Appellees.**

No. S–1360.

Supreme Court of Alaska.

Oct. 2, 1987.

---

Bruce A. Moore and A. Lee Petersen, Law Offices of A. Lee Petersen, Anchorage, for appellant.

John F. Clough, III, Leon T. Vance, and Ann G. Vance, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellees.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

This appeal arises from the dismissal of appellant Alaska Trams' action against appellees Alaska Electric Light & Power, William A. Corbus, and certain real property (hereinafter AELP, collectively) to secure an aerial easement required for the construction of a tramway.[1] Because we are unable to say that the trial court abused its discretion in dismissing the action, the judgment of the superior court is affirmed.

### I

For several years, Alaska Trams had wanted to build a tramway between the City of Juneau and the top of Mt. Juneau as part of a resort/hotel complex. In preparation for the anticipated construction, Alaska Trams contacted AELP to purchase certain real property to be used as a base for the tram terminal and hotel. Alaska Trams also wanted to obtain an aerial easement to permit the tramway to cross AELP's adjacent property.

Negotiations were consummated in November 1976 when Alaska Trams and AELP signed a contract for the sale of 2.5 acres near downtown Juneau. The sale was closed in December 1976. The contract did not mention an aerial easement over adjacent AELP property. It is this omission which forms the basis of this appeal.

---

1. William A. Corbus and Does I–XX are employees or agents of AELP.

Roughly nine months later, in August 1977, Alaska Trams sent a letter to AELP in which Alaska Trams indicated that it was aware that the contract did not contain explicit mention of the easement in question. The letter also indicated, however, that it was Alaska Trams' belief that "this was just an oversight in typing." This letter was the opening salvo: between 1977 and 1984, Alaska Trams sent AELP no fewer than twelve letters, all threatening legal action if AELP did not immediately convey the aerial easement. AELP did not convey the easement; Alaska Trams finally filed suit on August 6, 1984 seeking conveyance of the easement or damages.

In January 1985, Alaska Trams filed a motion to disqualify Judge Pegues for cause. Judge Pegues denied the motion. The motion was referred to an independent judge, Judge Keene, for a ruling pursuant to AS 22.20.020(c).[2] Judge Keene also denied the motion.

Ultimately, all of Alaska Trams' causes of action were dismissed on AELP's various summary judgment motions. In addition, the trial court dismissed Alaska Trams' action with prejudice as a sanction under Civil Rule 37(b)(2)[3] for what the trial

court termed Alaska Trams' unexcused and willful refusal to comply with discovery orders. This appeal followed.

## II

The first issue we address concerns Judges Pegues' and Keene's refusal to disqualify Judge Pegues after he was challenged for cause. Alaska Trams argues that both Judge Pegues and Judge Keene based their determinations solely upon AS 22.20.020(a)(6),[4] rather than upon the recusal considerations discussed in Alaska Code of Judicial Conduct Canon 3(C)(1)(a).[5] Alaska Trams asserts that, had Canon 3(C) been considered, Judge Pegues would have been disqualified because of the reasonable inference that Judge Pegues was biased against Alaska Trams. This argument is supported by citation to a number of instances of alleged bias, including counsel's generalized feelings of unfair treatment, Judge Pegues' past involvement in environmental protection movements, unspecified sarcastic comments made by Judge Pegues in another proceeding, and a comment contained in a memorandum opinion in which Judge Pegues denied Alaska Trams' motion for preliminary injunction.[6]

---

**2.** AS 22.20.020(c) provides in part:
   If a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts or, if none, by the other members of the supreme court.

**3.** Alaska R.Civ.P. 37(b)(2) provides in part:
   If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
   ....
   (C) An order ... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

**4.** AS 22.20.020(a)(6) provides:
   A judicial officer may not act as such in a court of which the judicial officer is a member in an action in which
   ....
   (6) the judicial officer feels that, for any reason, a fair and impartial decision cannot be given.

Subsections (1)–(5) of AS 22.20.020(a) involve objective measures of cause for disqualification, such as personal involvement in a case, as opposed to the subjective measure relevant here.

**5.** Alaska Code of Judicial Conduct Canon 3(C)(1) provides:
   A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
   (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings; ...

**6.** In the order denying the preliminary injunction, Judge Pegues referred to "Alaska Trams' imminent, alleged irreparable injury." He then noted that:
   The court uses the modifier "alleged" for a reason. There is something about Alaska Trams' proposal that invokes the memory of Catherine the Great's Potemkin villages.
   The court later explained this comment as an attempt at "judicial humor."

In making this argument, Alaska Trams misses an important point: the trial court explicitly considered the recusal standard found in Canon 3(C) and determined that recusal under that standard was inappropriate. Thus, Alaska Trams' argument alleging that the judge failed to consider the ethical canon is without merit.[7]

The remaining question is whether Judges Pegues' and Keene's refusal to disqualify Judge Pegues constituted an abuse of discretion. *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979). Such a refusal is to be accorded great weight and will be reversed on appeal only when it is evident that reasonable persons could not rationally come to the same conclusion on the basis of known facts. *Blake v. Gilbert*, 702 P.2d 631, 640 (Alaska 1985). In this regard, "[i]t should be kept in mind that a judge has as great an obligation not to disqualify himself, when there is no occasion to do so, as he has to do so in the presence of valid reasons." *Amidon*, 604 P.2d at 577.

■ Applying these principles to the present action, we are unable to say that the refusal to disqualify Judge Pegues was an abuse of discretion. A review of the record as a whole fails to reveal any unfairness in the conduct of the trial and the alleged instances of bias, considered either collectively or individually, fail to demonstrate any specific bias or generalized pattern of bias. We, therefore, affirm Judges Pegues' and Keene's refusal to disqualify Judge Pegues for cause.

### III

In its memorandum opinion, the trial court dismissed Alaska Trams' complaint with prejudice pursuant to Civil Rule 37(b)

for failure to comply with discovery orders. The court stated, in part:

> The court previously issued orders on April 11, 1985, and May 3, 1985, requiring Alaska Trams to make discovery as requested by [AELP]. On July 8, 1985, this court ordered Alaska Trams to make discovery by August 27, 1985, of the documents to be requested by [AELP] by July 28, 1985. The court granted this additional time in order for [AELP] to restate its discovery requests with still greater specificity to avoid any further claims of confusion by Alaska Trams. Alaska Trams was expressly warned that failure to comply with the order or to show to the court its inability to comply by August 27, 1985, would result in the complaint being dismissed with prejudice.
>
> . . . .
>
> This court finds, ... that Alaska Trams willfully and inexcusably failed to comply with this court's order after being warned of the dire consequences. While litigation-ending sanctions should be imposed sparingly, they are necessary here to deter just the kind of conduct that Alaska Trams has purposely decided to employ. Accordingly, [AELP's] motion to dismiss with prejudice is granted.

Alaska Trams argues that the dismissal sanction was improper because the court erroneously concluded that Alaska Trams willfully failed to comply with its discovery orders and because the sanction was excessive in light of the material actually withheld.[8]

Civil Rule 37(b) authorizes the trial court to impose a wide range of sanctions on a party who fails to comply with discovery orders. *Dade v. State, Child Support Enforcement Division ex rel. Lovett*, 725 P.2d 706, 708 (Alaska 1986). The purpose

---

7. The recusal provision found in Canon 3(C)(1)(a) and the reasons requiring disqualification set forth in AS 22.20.020(a)(6) are related, but somewhat different. We have said that where a judge's refusal to disqualify himself is "patently unreasonable," we will reverse, but that in cases "[w]here only the appearance of partiality is involved" we will require a "greater showing" for reversal. *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979).

8. Alaska Trams also argues that the court's discovery orders were "unlawful," but it does not explain why and we are unable to perceive a basis for the allegation. Consequently, we do not consider this part of Alaska Trams' argument. *E.g., Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236, 1238 n. 2 (Alaska 1984); *Craig Taylor Equipment v. Pettibone Corp.*, 659 P.2d 594, 596 n. 1 (Alaska 1983); *State v. O'Neill Investigations*, 609 P.2d 520, 528 (Alaska 1980).

of the sanctions is to encourage discovery and deter noncompliance by allowing trial judges to enforce their discovery orders, and to ensure that parties will not profit from their own willful failure to comply with such orders. *Hawes Firearms v. Edwards,* 634 P.2d 377, 378 (Alaska 1981). Although sanctions which end litigation are generally disfavored and may even constitute a denial of due process, the imposition of such sanctions is justified if the failure to comply with a discovery order is willful. *Hawes Firearms,* 634 P.2d at 378. "Willfulness" is defined as a conscious intent to impede discovery. *Dade,* 725 P.2d at 708; *Hawes Firearms,* 634 P.2d at 378. Once noncompliance is shown, the burden is upon the noncomplying party to prove that its failure to provide discovery was not willful. *Dade,* 725 P.2d at 708; *Hawes Firearms,* 634 P.2d at 378. The choice of a particular sanction is committed to the broad discretion of the trial court and will not be set aside absent an abuse of discretion. *Dade,* 725 P.2d at 708; *Hawes Firearms,* 634 P.2d at 378.

■ While Alaska Trams admits that it did not fully comply with the discovery order in this case, it appears to argue that the imposition of any sanction was improper because there was substantial compliance before the discovery deadline, full compliance was obtained after the deadline had passed, and its noncompliance was not willful. The trial court considered and rejected these arguments, stating:

> Alaska Trams admits that some accounting and banking records requested by [AELP] were not produced until September 11 or 12. Alaska Trams argues that any prior nonproduction of materials previously in existence was inadvertent, not willful, and "was due to confusion resulting from volume and from the fact that the great majority of the records of Alaska Trams were already in the custody of the court." ... While it is possible, although just barely, that counsel for Alaska Trams was himself personally unaware of the existence and location of the additional materials, it is totally incredible under the circumstances that his client, Chuck Keen, was unaware of

them. The only reasonable conclusion, in the absence of a credible explanation— and none has been offered—is that Keen willfully withheld the materials until their discovery was compelled by the events in an unrelated case.

We agree. Because Alaska Trams admits that it did not fully comply with the trial court's discovery orders by the stated deadline, it bore the burden of demonstrating to the court that its noncompliance was not willful. This it clearly has failed to do. Nor will the fact that Alaska Trams ultimately produced the requested materials remove the taint of its willful disregard of the trial court's production orders. *See Dade,* 725 P.2d at 707 n. 1. We, thus, find no abuse of discretion in the trial court's imposition of a Civil Rule 37(b) sanction.

■ Alaska Trams also argues that the sanction actually imposed was excessive in light of the nature of the documents withheld and the issues to which they did or did not relate. In brief, we understand Alaska Trams to be arguing that because the materials withheld related primarily to damages issues on only certain of its tort claims, dismissal of the entire case was excessive; the sanction should have been limited to those claims actually involved.

While there certainly may be cases where outright dismissal would be an inappropriate sanction because of the trivial or incidental nature of the materials in relation to the overall action, we do not believe this to be a case of trivial noncompliance. The fact that an action includes issues other than damage issues does not mean that damages are not important; indeed, they are often of primary importance. Withholding materials relating to a party's damages may seriously prejudice the adverse party by making it difficult or impossible to adequately assess the strength of the opponent's case, thereby leaving the opponent in a weakened position for settlement negotiations or other purposes. Thus, far from being incidental, the withheld materials in this case could be viewed as essential to the formulation of AELP's overall trial strategy. In such a case, where the noncompliance relates to substantial, as opposed to

incidental, materials our inquiry must focus upon the sanctioned party's behavior. *Cf., Diapulse Corp. of America v. Curtis Publishing,* 374 F.2d 442, 446–47 (2d Cir.1967) (dismissal of libel complaint justified where sanctioned plaintiff exhibited flagrant disregard for rules of discovery even though withheld material related only to issue of truth).

AELP's first formal request for production was served on Alaska Trams on October 12, 1984. AELP contended that the materials produced by Alaska Trams in response to this request were not complete because they included no materials relating to the ownership or financing of the tramway, no corporate or banking records, and no expenditure or tax information. Alaska Trams objected to these requests on the grounds that they were "overly broad," "burdensome," and "irrelevant." Alaska Trams also indicated that it could not be compelled to produce information pertaining to the financing of the tramway.

On December 14, 1984, AELP moved to compel production of the requested materials. This motion was granted on April 11, 1985. In granting the motion, the trial court specifically indicated that Alaska Trams was free to move for a protective order if it had justifiable concerns pertaining to the wrongful use of the financial information. However, the trial court warned Alaska Trams that it could interpose no further delay in making discovery. Alaska Trams did not move for a protective order but it did inform AELP that it would not provide the requested financial information.

On April 25, AELP moved for sanctions for nonproduction. AELP sought an order establishing the fact that Alaska Trams had no financing for the tram project because of the project's inherent defects. Alaska Trams filed no opposition. The trial court did not, however, grant the motion, but instead, on May 3, issued a second production order to be satisfied on or before May 13.

Alaska Trams responded to this order by delivering several documents to AELP. On May 9, it filed a motion for a protective order relieving it of the obligation to produce any financial information until 90 days prior to trial. On June 18, the trial court denied Alaska Trams' "overly broad motion for [a] protective order," but it did provide Alaska Trams some limited protection and ordered Alaska Trams to comply with discovery requests on or before June 28.

Alaska Trams had still not complied with the discovery requests by July 8, and the trial court imposed limited sanctions, indicating that:

> [Alaska Trams] has until the close of business on August 27, 1985, to comply fully with this order [to produce] or to prove to this court that it does not have the ability to comply. [AELP] shall by July 28, 1985, furnish [Alaska Trams] specifics on the discovery which [Alaska Trams] has failed to make, and if [Alaska Trams] fails to make that discovery by August 27, 1985, its complaint shall be dismissed with prejudice.

AELP complied with the court order in a timely manner. Despite this order, however, Alaska Trams still refused to produce requested materials pertaining to the financial aspects and ownership interests of the tramway project. These materials had been requested more than a year previously; Alaska Trams did not file any valid objections to production or make any showing that it could not comply by the specified deadline.

On September 5, AELP moved to dismiss Alaska Trams' action for failure to comply with the trial court's July 8 production order. On September 11, Alaska Trams invited AELP's counsel to attend a production of document session the next day in an unrelated case, *Craine v. Keen,* No. 1JU–83–554 Civ., and at that time most of the materials requested for the present action were finally produced. The trial court dismissed the complaint on November 6.

Thus, in this case, the trial court issued four separate production orders regarding the same materials over the course of fourteen months, imposed non-litigation ending sanctions, and warned Alaska Trams that continued failure to produce would result

in dismissal. Even after this explicit warning, however, Alaska Trams refused to produce the requested materials and provided no credible explanation for its recalcitrance. In the face of such obstinate and flagrant disregard for the court's orders and the rules of discovery, we are unable to say that the trial court's dismissal was unjustified or without reason. Accordingly, the trial court's order dismissing Alaska Trams' action with prejudice cannot be considered an abuse of discretion and is affirmed.

### IV

Because of the disposition above, we need not consider Alaska Trams' other arguments.[9] The judgment of the trial court is AFFIRMED.

---

**9.** Alaska Trams also appealed the trial court's summary judgments in favor of AELP on its contract based claims, its equitable claims, its tort claims, and its condemnation claim.