**Regina A. LONG, Appellant,**

v.

**Dennis A. LONG, Appellee.**

**No. S–3758.**

Supreme Court of Alaska.

Aug. 9, 1991.

Rehearing Denied Oct. 3, 1991.

---

Cheri C. Jacobus, Ross, Gingras, Bailey & Miner, Anchorage, for appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The superior court ordered sole physical and legal custody of the four minor children in this case changed from their mother, Regina Long, to their father, Dennis

Long. The superior court also ordered Regina Long to pay child support. Regina Long appeals.

## I

Regina and Dennis Long were married on May 26, 1973, and divorced on July 24, 1987. The marriage produced four children: Virginia, born October 7, 1973; Rebecca, born June 4, 1976; Gregory, born April 18, 1980; and Jonathan, born January 18, 1983. Regina, plaintiff in the divorce proceeding, sued for sole custody of the children. Dennis counterclaimed for sole custody.

In September 1987, Judge Peter A. Michalski conducted a two-day hearing to adjudicate the custody claims. At the close of the hearing, Judge Michalski ordered divided custody of the Long children. Dennis received custody of the oldest daughter, Virginia; Regina received custody of the three younger children.

The Longs' divorce and custody proceedings were very acrimonious. Unfortunately, the new custody arrangement did nothing to alleviate the acrimony. Instead, Dennis and Regina continually fought over property-division, visitation, child-care, and child-support issues. Regina returned to court several times during 1988, obtaining orders against Dennis for child support payments in arrears and attorney's fees. Dennis raised defenses and claims of his own in each proceeding.

Meanwhile, the Longs' personal lives changed considerably. In late 1987, Regina and the three younger children moved in with Albert J. Turinsky, Jr. In August 1988, Dennis married Wanda Long, a woman with two young children of her own. Additionally, either in late 1988 or early 1989, Regina and Turinsky made plans to relocate, with the three younger Long children, from Anchorage to Juneau.[1] The proposed move demonstrably upset several of the children.

Dennis and Regina's new relationships significantly affected the Long children. On the positive side, the children had a great deal more adult supervision in each household. On the negative side, the new relationships added two new participants to an ongoing feud. In each household, the adults openly disparaged the other household. The children's guardian ad litem found this practice particularly harmful to the children.[2] Additionally, all four adults became involved in a struggle to dictate minor details in the visitation scheme. One couple might refuse to accept the children except at a certain location and time; the other couple would respond by deliberately depositing the children at a different location at a different time. For one period of about eight months, Dennis flatly refused to take the children for visitation at all. Meanwhile, in Regina's household the adults limited the children's access to the telephone in order to prevent them from talking to their father. Testimony indicated that on at least one occasion Regina and Turinsky disassembled a telephone before leaving the children at home alone. For many months, even when a court order required Regina and Turinsky to allow telephone contact between Dennis and the children, Regina and Turinsky recorded and monitored all such calls.

Finally, on January 30, 1989, Dennis Long, appearing pro se, filed a Motion for

---

1. It is not clear from the record whether Regina and Turinsky announced their intention to relocate to Juneau before or after Dennis moved for change of custody. Turinsky decided to relocate so that he could study for a paralegal certificate. Less specific academic ambitions motivated Regina's decision to relocate.

2. The children's guardian ad litem filed a report that criticized the effect of the adults' continuing dispute on the children. The report states:

    File information and the children's statements indicate that the children have been placed under a great deal of duress in the past two years. The GAL does not believe the parents were initially able to focus on the harm done to their children in the process of fighting each other. All the children have had nightmares and anxieties. [Virginia] has severe behavior problems, Jon regressed with toilet training at one point, and both Greg and Jon feared for their parents' well-being. It appears to the GAL that all 4 adults contributed to this. The children state that all 4 have made negative comments about the other side, and/or about custody issues, resulting in the children feeling pressured and guilty.

Change of Custody in which he requested that the superior court award him custody of all four children. In August 1989, Judge Victor D. Carlson conducted a five-day hearing on Dennis' motion. On the last day of the hearing, Judge Carlson rendered an oral statement of decision changing "sole legal and physical custody" of the four Long children to Dennis. The court also granted Regina liberal visitation with the three younger children and "optional" visitation with Virginia.[3] The court did not issue written findings.[4]

Some four weeks after the August 1989 hearing, Dennis and Regina were again in court, arguing the first of many motions that they would each file before the end of the year. Among these motions was Regina's Motion for Reconsideration of the change of custody order, which Judge Carlson denied on December 19, 1989. Also on December 19, 1989, Judge Carlson ordered Regina to pay child support to Dennis in the amount of one hundred dollars per child per month.

The following day, December 20, 1989, Regina filed, under seal, a Motion to Set Aside Orders Modifying Custody and to Recuse Assigned Trial Judge. The motion for recusal alleged an appearance of impropriety in the way Judge Carlson had handled the case, pointing specifically to aspects of the custody modification hearing and to decisions on the parties' multiple motions and cross-motions in September through December 1989.

Judge Carlson refused to recuse himself, and the matter was assigned to Judge Karen L. Hunt. On February 27, 1990, Judge Hunt denied Regina Long's motion to disqualify Judge Carlson. Regina appeals Judge Carlson's child custody, child support, and recusal decisions, and Judge Hunt's refusal to disqualify Judge Carlson.

II

A child custody or visitation award "may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests" of the children involved. AS 25.20.110. The parent making the motion for custody modification bears the burden of proving a substantial change of circumstances as a threshold matter. *Lee v. Cox*, 790 P.2d 1359, 1361 (Alaska 1990); *Garding v. Garding*, 767 P.2d 183, 184–85 (Alaska 1989). Once the movant meets that burden, he or she is entitled "to a hearing to consider whether, in light of such changed circumstances, it is in the child's best interest to alter the existing custodial arrangement." *Lee*, 790 P.2d at 1361. The burden of proof remains on the parent making the motion to "demonstrate that the changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing custody decree." *Id.*

We will reverse the trial court's order to modify custody only if "the record shows an abuse of discretion or if controlling factual findings are clearly erroneous." *McClain v. McClain*, 716 P.2d 381, 384 (Alaska 1986); *Gratrix v. Gratrix*, 652 P.2d 76, 79–80 (Alaska 1982). Abuse of discretion in child custody cases may occur when, in reaching its decision, the trial court considers improper factors, fails to consider statutorily mandated factors, or gives too much weight to some factors. *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985); *Starkweather v. Curritt*, 636 P.2d 1181, 1182–83 (Alaska 1981); *Deivert v. Oseira*, 628 P.2d 575, 577 (Alaska 1981).

A. *Substantial Change of Circumstances*

The superior court's oral statement of decision contains four factual findings to

---

3. Virginia's custody status shifted constantly after the first hearing. She left her father's home, but eventually returned to the home her father established with Wanda Long. She was still with Dennis and Wanda Long at the time of the custody modification hearing. At the modification hearing, Regina Long stipulated that, under

the circumstances, Dennis should retake custody of Virginia.

4. The court entered a final order granting change of custody on October 27, 1989, *nunc pro tunc*, to August 25, 1989.

support the conclusion that Dennis had shown a substantial change of circumstances. Regina argues that *none* of these controlling factual findings can support a decision to modify custody. Regina asserts that the factual findings were clearly erroneous, and that the superior court's misconsideration of all four factual findings amounted to an abuse of discretion. We disagree.

Initially, we consider Regina's assertions of clear error. Judge Carlson stated: "I find that there is a substantial change in circumstances *which has affected the children.* The war has continued for another couple years. It's been waged by both parties. Each party knows how to pull the other's strings." (Emphasis added.)

Regina notes that the bitter tenor of the custody dispute existed at the original custody hearing and entered into the trial court's decision there. Thus, she argues, the parties' acrimony two years later could not be a "change" of circumstances. This argument misses the point.

■ Judge Carlson's finding correctly focuses on the children in the very first sentence quoted above. It is irrelevant that the parents' behavior patterns remained constantly contentious between 1987 and 1989. What is important is that the circumstances of the children *worsened* as a result of their parents' actions. *See House v. House,* 779 P.2d 1204, 1207 (Alaska 1989) (crucial inquiry was whether *the child* "faced ... a potentially disturbing and upsetting change in circumstances"). The guardian ad litem's report and the testimony of the parties and of witnesses at trial all indicate that the ongoing dispute between Dennis and Regina had harmed the children. Thus, Judge Carlson's factual finding on this point was not erroneous.

Judge Carlson stated his second finding as follows:

There's been additional change in circumstance. Each party has a new relationship in the nature of a marriage. The relationship between Mrs. Long and Mr. Turinsky, stormy. At least he moved out for awhile. He returned to marriage de facto. Mr. Long has remarried.

■ Regina Long correctly points out that a recent remarriage—as an improvement in a noncustodial parent's position—is generally not sufficient to justify custody modification. *See, e.g., Gratrix,* 652 P.2d at 82; *Nichols v. Nichols,* 516 P.2d 732, 736 (Alaska 1973). Plainly, however, Judge Carlson found more than a mere improvement in Dennis Long's position due to remarriage. Judge Carlson's decision contrasted Regina's new household and found that her position, insofar as it affected the children, had deteriorated, while Dennis' position, gauged under the same criterion, had improved. The transcript of the hearing contains ample evidence to support such a finding. Of particular importance here is the guardian ad litem's report, which repeatedly noted problems in Regina's household related to Mr. Turinsky's assumption of disciplinary responsibility. Additionally, the guardian's report singled out as action particularly harmful to the children Regina and Turinsky's practice of taping and monitoring telephone calls between the children and their father. Judge Carlson's inclusion of the contrast between the new relationships as one factor in his changed circumstances analysis was not erroneous.

■ As his third finding of changed circumstances, Judge Carlson noted that the oldest daughter, Virginia, was now in Dennis Long's custody. Regina Long argues that because Judge Michalski originally awarded custody of Virginia to Dennis, Virginia's presence in Dennis' home two years later cannot amount to a "change." Again Regina's argument misses the point. Virginia's custody status changed continually between 1987 and 1989. Virginia's voluntary return to Dennis Long's custody *after* Dennis remarried and established a new household definitely represented a change in circumstances worthy of some consideration in Judge Carlson's analysis, especially in regard to Virginia's own custody status.

■ Judge Carlson's fourth and final finding in support of his changed circumstances decision was Regina's intent "to move from the Anchorage community."

This court has held that a custodial parent's decision to move out of state may amount to a substantial change of circumstances as a matter of law. *House,* 779 P.2d at 1207–08. Certainly the custodial parent's decision to move six hundred miles from the noncustodial parent presents a factor that the court should include in its changed circumstances analysis.

We turn now to Regina's argument that Judge Carlson committed an abuse of discretion in finding that the sum of the changed circumstances in this case amounted to a substantial change of circumstances. In the past, we have reviewed multiple changed circumstances to determine whether, in the aggregate, the changes were sufficient to justify a reevaluation of a custody decree. *See Garding,* 767 P.2d at 185–86; *Gratrix,* 652 P.2d at 78–79. Hence, Judge Carlson's ruling that the four changes of circumstances in this case together amounted to a substantial change rests initially on solid precedent.

Of Judge Carlson's four change of circumstances findings, the current status of the oldest daughter, Virginia, receives the least emphasis. Certainly the court did not abuse its discretion insofar as it considered this factor alone "substantial" for purposes of deciding Virginia's status. On the other hand, we do not find any language in Judge Carlson's decision to suggest that Virginia's current status carried significant weight in the analysis of the three younger children's changed circumstances.

Accordingly, we are left with three changed circumstances factors to consider as support for Judge Carlson's decision to reevaluate and to change the custody status of the younger children: (1) the harm to the children resulting from the parties' continuing disputes; (2) the parties' new relationships, *i.e.,* Dennis Long's improved position in contrast to Regina Long's somewhat less stable and less auspicious position; and (3) Regina's proposed relocation to Juneau.

■ As noted, the record contains ample evidence to suggest that the first factor was of great significance. The parents' continuing feud had harmed the children

and threatened to harm the children further unless some change occurred. Ordinarily, hostility and dispute between the parents, in and of itself, will not be considered a substantial change of circumstances unless the adverse impact on the child is extreme. *E.g., Birge v. Birge,* 34 Or.App. 581, 579 P.2d 297, 299 (1978). The effect of hostility between the parents, however, may combine with other significant changes in circumstance to amount, in the aggregate, to a substantial change sufficient to warrant change of custody. *See id.; see also* 2 H. Clark, *The Law of Domestic Relations in the United States,* § 20.9, at 560–61 (2d ed. 1987).

■ The record also supports a finding that Dennis Long's remarriage amounted to a change potentially beneficial to the children's interests, while Regina Long's new relationship amounted to a change at least potentially detrimental to the children's interests. On review, "great weight must be accorded to the trial judge's experience and to his evaluation of demeanor testimony." *Sheridan v. Sheridan,* 466 P.2d 821, 824 (Alaska 1970) (cited in *Faro v. Faro,* 579 P.2d 1377, 1379 (Alaska 1978)). In this case, Judge Carlson heard at length from all persons involved in the new relationships. Additionally, the guardian ad litem's report described the effect of the parties' new relationships on the children. The sum of these considerations convinces us that Judge Carlson reasonably could assign significant weight to the total impact that the parties' dissimilar new relationships had on the children.

Finally, Judge Carlson found that Regina's intent "to move from the Anchorage community ... will greatly inhibit what we know is necessary in this case, that the children have communication with their father." Regina argues that a six-hundred mile move from one city to another in Alaska is not a substantial change of circumstances. This argument fails to address Judge Carlson's concern for the children's continued communication with their father. Regina also invokes the following statement, made by Judge Carlson as he re-

cessed the hearing at the end of the third day:

> I'm greatly concerned about the fact that I think this case is pretty much where Judge Michalski found it, where he left it and I don't see how it's changed very much from then. There's still all this emotional turmoil between the two parties and maybe the distance of six-hundred miles between here and Juneau will reduce some of that. I don't know.

Regina argues that because only two witnesses testified after Judge Carlson made that statement, Judge Carlson reasonably could not have changed his mind about the impact of the proposed move to Juneau. We disagree.

■ Regina's argument ignores the fact that Dennis Long spent the entire fourth day of the hearing on the stand, mainly under cross-examination by Regina's counsel. That protracted testimony must have added immeasurably to Judge Carlson's final estimation of Dennis Long. That testimony also must have added to Judge Carlson's sense of what impact the proposed move away from Dennis would have on the children.

■ We conclude that *in the aggregate*, the factors affecting the three younger children—the continuing conflict between the parents, the combined effect of both new relationships, and Regina's proposed move to Juneau—can reasonably be held to constitute a substantial change of circumstances for purposes of the requisite preliminary showing. That is, taking the record as a whole, we cannot say that Judge Carlson erred in finding a substantial change of circumstances or in finding that the change in circumstances required modification of the original custody order. *See* AS 25.20.110; *Lee*, 790 P.2d at 1361.

### B. *The Children's Best Interests*

■ Judge Carlson listed some six factors that led him to decide that a change of custody was in the best interests of the children. He considered each parent's capability "of providing for the material, spiritual and social needs of the children." He considered whether one parent would be a "better role model" than the other. He considered the "stability of home, school, neighborhood ... [and] security" of the children. He considered the express preference of Rebecca, the second oldest child (thirteen at the time of the hearing). He considered the importance of keeping all of the children together.[5] And Judge Carlson also considered the likelihood that one parent would "promote a relationship of the children" with the other parent.

Regina contends that Judge Carlson neglected to apply the mandatory factors of AS 25.24.150 in reaching his decision. Again, we disagree. AS 25.24.150 provides, in pertinent part:

> (c) ... In determining the best interests of the child, the court shall consider
>
> (1) the physical, emotional, mental, religious, and social needs of the child;
>
> (2) the capability and desire of each parent to meet these needs;
>
> (3) the child's preference if the child is of sufficient age and capacity to form a preference;
>
> (4) the love and affection existing between the child and each parent;
>
> (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> (6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
>
> (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
>
> (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

---

5. Regina argues that since Judge Michalski had considered the importance of keeping the children together before he ordered divided custody, Judge Carlson should not have *re*considered this factor. Such an argument misconstrues the notion of "due deference." Judge Michalski did not decide that the children *had* to be kept apart.

(9) other factors that the court considers pertinent.

The considerations in Judge Carlson's best interests discussion directly address the mandatory factors in AS 25.24.150, subsections (c)(1)–(3), (6) & (9). No evidence in the record implies that Judge Carlson should have discussed subsections (c)(7) & (8). Similarly, evidence in the record indicates that the children felt much love and affection for both parents. Thus, Judge Carlson's failure to discuss subsection (c)(4) is comprehensible: the factor was neutral.

The only factor Judge Carlson perhaps failed to address completely is the one in subsection (c)(5) (child's length of time in stable, satisfactory environment and desirability of maintaining continuity). Even there, however, discussion of changed circumstances necessarily addressed the question of environment and found Regina's household lacking. And arguably, Judge Carlson's finding that Dennis made the "better role model" for the children addresses the question of the desirability of maintaining continuity. We conclude that Judge Carlson properly employed the mandatory factors of AS 25.24.150.[6]

Finally, Regina Long asserts that in his best interests analysis Judge Carlson reweighed two items of evidence that had been before Judge Michalski in the original custody hearing. First, Regina asserts that a witness at both hearings, Ms. Pamela Yeargan, testified "to the same facts" at both hearings. This assertion is inaccurate.

It is true that Judge Carlson expressly gave "great weight" to Ms. Yeargan's insights into the Long family's circumstances. Furthermore, Ms. Yeargan's opinions and insights, as expressed in the second hearing, necessarily depended in part upon her total experience with the Long family. Nonetheless, the most telling passages of her testimony before

Judge Carlson focused on the recent circumstances of the Long family and concerned almost entirely matters of fact that arose after the first custody hearing. Thus, Regina's assertion of abuse of discretion on this point is without merit.

Second, Regina asserts that Judge Carlson committed an abuse of discretion by reweighing a psychological report that had been part of the record in the first custody hearing. Judge Carlson did refer in his decision to a psychological evaluation by a Dr. Harper. Judge Carlson stated:

> I find that both parties are equally capable and equally limited as far as promoting a relationship with the noncustodial parent. On the face of it, it appears that Mrs. Long may have been more willing to do that, but I think that there's an underlying—[sic] I don't accept it for it's face value. I notice the edge in Mrs. Long's voice which certainly gave me some pause for concern. I went back and reviewed Dr. Harper's evaluation and I think that at least Mr. Long is at least as likely to promote a relationship of the children with their mother as is Mrs. Long and I would tend to think that he's more likely to· in the circumstances with which he's now confronted....

In this portion of his decision, Judge Carlson appears to rely upon psychological evaluations of the parties and of the children that Dr. James F. Harper prepared for the court in the original custody proceeding.

Regina correctly argues that a court considering custody modification must accord great weight to the findings of the court in the original custody hearing. *Gratrix*, 652 P.2d at 80; *Nichols*, 516 P.2d at 735. Furthermore, consideration of improper factors or an improper weighting of factors may constitute abuse of discretion. *Gratrix*, 652 P.2d at 80; *Deivert*, 628 P.2d at 577. Thus, Regina asserts with good

---

6. We also conclude that Judge Carlson's findings specified the negative effect that the changed circumstances had on the children precisely enough to bring his decision within the requirements of *Lee*, 790 P.2d at 1361 (holding that trial court must find "changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing custody decree").

reason that Judge Carlson committed an abuse of discretion by reweighing Dr. Harper's evaluation. However, "[i]n the context of a custody modification decree, this analysis must be applied to assess whether the superior court was justified in changing the previous custody determination."[7] *Gratrix,* 652 P.2d at 80. Abuse of discretion on a subsidiary point, therefore, does not necessarily result in an abuse of discretion in the ultimate decision.

■■■ Significantly, Judge Carlson refers to the psychological evaluations *after* he refers to conclusions about Regina Long that he drew in response to Regina's court room demeanor: "I notice the edge in Mrs. Long's voice which certainly gave me some pause for concern." We agree that Judge Carlson erred by relying on the two-year old psychological evaluations prepared for the original custody hearing. We do not agree, however, that Judge Carlson had no justification for deciding that Dennis would be more likely than Regina to promote a relationship between the children and the ex-spouse. Evidence in the record supports Judge Carlson's wary response to Regina. Consequently, we conclude that, improper consideration of a factor notwithstanding, Judge Carlson did not commit an abuse of discretion in his ultimate custody decision.

### III

In December 1989, Judge Carlson issued several rulings in this case, including a denial of Regina's Motion for Reconsideration and an order against Regina for payment of child support. The day after Judge Carlson issued those rulings, Regina Long filed, under seal, a Motion to Set Aside Orders Modifying Custody and to Recuse Assigned Trial Judge. Judge Carlson refused to recuse himself.

Regina argues that Judge Carlson violated Canons 2 and 3 of the Code of Judicial Conduct when he refused to recuse himself. Canon 2 states that a judge should avoid impropriety and the appearance of impropriety in all activities. Alaska Code of Judicial Conduct, Canon 2. Canon 3 requires a judge to "disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including ... instances where ... (a) he has a personal bias or prejudice concerning a party." *Id.* at Canon 3(C)(1). Regina also argues that Judge Carlson violated AS 22.20.020(a)(9), which forbids a judge from acting in any matter in which the judge "feels that, for any reason, a fair and impartial decision cannot be given."

Regina's assertions that Judge Carlson violated the two Canons and the statute rely upon the following facts: Dennis Long is an Anchorage police officer and a witness Dennis called at the custody modification hearing, Officer Chapman, was a police officer who had been involved in a brief police investigation of Judge Carlson in Spring 1989. These facts alone do not provide sufficient foundation for Regina's argument here.

The two major Anchorage newspapers did not reveal information about the Spring 1989 police investigation of Judge Carlson to the public until December 1989. Nothing in the record suggests that Judge Carlson himself was aware at the time of the August 1989 custody modification hearing that the police had investigated him or that he knew Officer Chapman had been involved in the brief investigation. Nor does the record suggest that, at the time of the custody modification hearing, the police maintained any further interest in investigating Judge Carlson. Moreover, Officer Chapman's testimony was relevant to issues related to the best interests of the children in this case. Mr. Turinsky had worked with Officer Chapman on a city commission, and Officer Chapman's testimony at the custody modification hearing mainly concerned his personal knowledge of Turinsky. Some of Officer Chapman's testimony significantly impeached testimony Turinsky himself had earlier offered at the hearing.

---

7. In *Gratrix,* for example, the superior court's failure to accord due deference to the initial custody findings *and* the "absence of any sub-stantial change of circumstances" led us to conclude that the custody modification order was an abuse of discretion. *Gratrix,* 652 P.2d at 84.

■ "[W]here a judge's refusal to disqualify himself is 'patently unreasonable,' we will reverse, but ... in cases 'where only the appearance of partiality is involved' we will require a 'greater showing' for reversal." *Alaska Trams Corp. v. Alaska Elec. Light & Power,* 743 P.2d 350, 353 n. 7 (Alaska 1987) (quoting *Amidon v. State,* 604 P.2d 575, 578 (Alaska 1979)). Regina's ability to connect this case tangentially to the municipal police department simply is not a "great showing" of apparent partiality. Judge Carlson committed no abuse of discretion by refusing to recuse himself under the strictures of the Code of Judicial Conduct, Canons 2 and 3.

■ Regina's argument that Judge Carlson violated AS 22.20.020 is similarly conjectural and unconvincing. Whether Judge Carlson should have disqualified himself in this case to avoid rendering unfair decisions or decisions partial to Dennis Long is "a sensitive question of assessing all the facts and circumstances in order to determine whether ... an abuse of sound judicial discretion" occurred. *Blake v. Gilbert,* 702 P.2d 631, 642 (Alaska 1985) (quoting *United States v. Haldeman,* 559 F.2d 31, 139 n. 359 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977)). Judge Carlson's decision not to disqualify himself "will not be reversed 'unless it is plain that a fair-minded person could not rationally come to [the same] conclusion on the basis of known facts.'" *Id.* at 640 (quoting *Amidon v. State,* 604 P.2d 575, 577 (Alaska 1979)). The known facts in this case include a record of the evidence before Judge Carlson in the custody modification hearing and a decision by Judge Carlson based on that evidence. We have found that Judge Carlson's custody order was not an abuse of discretion; we likewise find that the facts rationally support Judge Carlson's refusal to disqualify

himself. In other words, "[a] review of the record as a whole fails to reveal any unfairness in the conduct of the [proceedings] and the alleged instances of bias, considered either collectively or individually, fail to demonstrate any specific bias or generalized pattern of bias." *Alaska Trams,* 743 P.2d at 353.

On February 27, 1990, Judge Karen L. Hunt heard from the parties in this case on the question of Judge Carlson's disqualification.[8] At the close of the hearing, Judge Hunt denied the motion to disqualify Judge Carlson. In her oral statement of decision, Judge Hunt first addressed Regina's argument that some of Dennis' motions had "been walked through [Judge Carlson's] chambers and signed." Judge Hunt found the procedure Regina complained of "prevalent" in the court system, "not improper," and quite susceptible to "an ordinary explanation" other than impropriety. Judge Hunt further explained that she found a "reasonable basis in law and in fact" to support the decision to change custody of the Long children to Dennis Long. Consequently, Judge Hunt refused to disqualify Judge Carlson.

■ Regina argues that Judge Hunt improperly reviewed Judge Carlson's decisions and actions.[9] We disagree. Judge Hunt found no evidence of partiality in the handling of post-hearing motions and orders. In addition, Judge Hunt found that Judge Carlson's decision in the case was reasonable for essentially the same reasons we have articulated above in reaching the same conclusion. Judge Hunt thus properly reviewed the known facts in the case before she determined that Judge Carlson had committed no abuse of discretion by refusing to recuse himself. *See Alaska Trams,* 743 P.2d at 352–53; *Blake,* 702 P.2d at 640; *Amidon v. State,* 604 P.2d at 577–78. We find that those facts rationally

---

8. AS 22.20.020(c) provides: "If a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose...."

9. Regina suggests that Judge Hunt should not have examined Judge Carlson's change of custody decision. Our decision in *Amidon* relies

upon precisely the contrary rule: When a trial judge has rendered a decision in a case, review of that judge's failure to disqualify himself or herself normally will require review of that underlying decision as part of the "known facts." *See Amidon,* 604 P.2d at 577–78. We made that point explicit in *Alaska Trams,* 743 P.2d at 353.

support Judge Hunt's decision. Thus, Judge Hunt committed no abuse of discretion in refusing to disqualify Judge Carlson.

## IV

On December 19, 1989, in an addendum to the original order changing custody of the Long children, the superior court ordered Regina Long to pay support in the amount of $100 per child per month. Regina Long raises several arguments in opposition to the superior court's child support order. One of these arguments has considerable merit.

The superior court's award of visitation to Regina is decidedly unclear. Also unclear is the way in which that award might affect support calculation under Alaska Civil Rule 90.3. The court ordered as follows:

> Visitation with the three younger children, Christmas 1989 for the two week period at the Plaintiff's expense, Spring vacation with Mr. Long of 1990, then that's reversed over the years. Summer visitation 1990 from July 10 through August 25 for the two boys and Rebecca, if she so chooses, at shared expense....
>
> We need to have some testimony or indication about the capacity of Mrs. Long to pay child support.... When in the same community Mrs. Long would have alternate weekend visitations, alternate birthdays, Friday—the weekend would be Friday from 6:00 p.m. through Sunday at 7:00 p.m. If not in the same community, if she is back here visiting, seventy-two hours out of any fifteen day period—[sic] out of any ten day period, but not to interfere with the children's schooling.

Dennis Long, appearing pro se, drafted the court's order almost verbatim, including the disjunctive last sentence. Judge Carlson signed the order without editing any of the visitation award language. As a result, the actual amount of visitation time specified in the order is uncertain. This uncertainty is fatal to the validity of the court's visitation and child support awards.

■■■ In particular, Regina argues that because the superior court's visitation decree specifically granted her visitation for at least thirty percent of the year, she has "shared custody" for purposes of child support calculation under Alaska Civil Rule 90.3.[10] *See Charlesworth v. Child Support Enforcement Division,* 779 P.2d 792, 795 (Alaska 1989). Regina further argues that under the shared custody formula of Rule 90.3, Dennis should pay *her* child support.

The visitation decree on its face appears to grant Regina potential visitation for at least thirty percent of the year when the decree awards "seventy-two hours out of any ... ten-day period," in the event that Regina has moved out of the Anchorage community. On the other hand, the part of the court decree governing visitation in the event that Regina remains in the Anchorage community specifies visitation for *just slightly less* than thirty percent of the year.[11]

---

**10.** Civil Rule 90.3(a) provides a basic guideline for awards of child support when one parent has sole or primary physical custody of the child. Civil Rule 90.3(b) imposes a more complex formula for calculating *both* parents' support obligations when "the parents are awarded shared physical custody as defined by paragraph (f)." *Id.* Paragraph (f) states that

> [a] parent has shared physical custody of children for purposes of this rule if the children reside with that parent for a period specified in writing of at least 30 percent of the year, regardless of the status of legal custody.

*Id.*

A supreme court order effective January 15, 1990, imposed the 30% requirement in Rule 90.3. Supreme Court Order 1008; Alaska R.Civ.P. 90.3(f). Prior to 1990, the requirement had been 25% percent. The 1990 amendment of Rule 90.3 undoubtedly constitutes a material change in circumstances sufficient to allow a parent to move for modification of child support. *Charlesworth v. Child Support Enforcement Division,* 779 P.2d 792, 794 (Alaska 1989). Consequently, even if the original child support order should have employed the 25% factor, after January 15, 1990 that order would have been subject to modification according to the 30% factor. Thus, we now review the trial court's support order in light of the 30% factor.

**11.** The court's visitation award, including summer vacation, Christmas or Spring vacation, and alternate holidays and birthdays, yields a total

The superior court's visitation decree is unacceptably ambiguous. Regina contends that when the court calculated her support obligation it ignored the shared custody provision of Rule 90.3(b). The record confirms that contention. Taking the record as a whole, we conclude that the superior court improperly coordinated, or failed to coordinate, the visitation and support awards in this case. Accordingly, we reverse the superior court's awards of child support and visitation and remand the case for redetermination of those issues.[12] Calculation of child support shall conform to the requirements of Rule 90.3 and the trial court shall make its actual calculations a matter of record. If the court fixes visitation with the noncustodial parent at thirty percent or more of the year, the court also should begin with the presumption that the shared custody provision of Rule 90.3(b) applies to the calculation of child support.

We AFFIRM in part and REVERSE in part, and REMAND to the trial court for further proceedings consistent with this opinion.

MATTHEWS, Justice, concurring.

I agree with the result of today's majority opinion. I also agree with the reasoning of the opinion except for the dictum that "Judge Carlson erred by relying on the two-year old psychological evaluations prepared for the original custody hearing." Majority Op. at 155. In my view, those evaluations were relevant to the issues of whether there was a change of circumstances and the best interests of the children. Relevant evidence is admissible except where it is prohibited constitutionally, legislatively, or by court rule. Alaska R.Evid. 402. The majority opinion cites no constitutional or statutory provision or rule which would prohibit admission of the psychological evaluations.

If Dr. Harper was available as a witness, his former testimony could have been excluded as hearsay. Alaska R.Evid. 804(b)(1). However, this objection was not raised in the trial court or on appeal and it is, therefore, waived. Further, I do not understand the majority opinion as relying on hearsay as a basis for its conclusion that Judge Carlson erred.

of approximately 108 days visitation per year. 30% of 365 days is 109.5.

12. The visitation decree in this case is of primary importance. Throughout the history of this divorce litigation the courts, the guardian ad litem and the parties have all agreed that only an award of sole legal custody to one parent, with liberal visitation to the noncustodial parent, was feasible. We agree. Upon remand, the court should very carefully and precisely fix the terms of visitation to facilitate the chances that the custody and visitation schemes will work in the best interests of the children.