NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CHARLES HOPSON and ADELINE HOPSON, ) | Supreme Court No. S-14223 |
| Appellants, ) | Superior Court No. 2BA-10-00133 CI |
| v. ) | MEMORANDUM OPINION AND JUDGMENT[*] |
| RASHAD HART, SR., ) | No. 1435 - September 12, 2012 |
| Appellee. ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Barrow, Michael Jeffery, Judge.

Appearances: Robert Campbell, Caliber Law Group, LLC, Barrow, for Appellants. Rashad Hart, Sr., pro se, Des Moines, Washington, Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices. Stowers, Justice, dissenting.

1. Emma Hopson and Rashad Hart, Sr. have one child together: Rashad Hart, Jr., born in 2006. Rashad, Jr. meets the requirements for tribal membership through his mother and he is registered with the Native Village of Barrow. Emma and Rashad, Sr. have never been married, but they lived together for varying periods of time between 2007 and 2010. No formal custody arrangement has ever been entered. Rashad, Jr. lived

---

[*]       Entered under Alaska Appellate Rule 214.

with Emma from birth until 2010. Although Emma and Rashad, Jr. lived with Rashad, Sr. in Washington for about three months in 2009, they have spent the majority of time living with Emma's parents, Charles and Adeline Hopson, in Barrow. Rashad, Sr. joined them in Barrow during the summer of 2010.

2. Emma and Rashad, Sr. each allege that the other has substance abuse issues and has perpetrated domestic violence in the past. During Summer 2010, Emma was on probation for a 2005 felony DUI conviction, and Rashad, Sr. was serving as her third-party custodian. Emma's probation has been revoked several times and she acknowledges her ongoing struggle with substance abuse; she testified she is working to overcome this problem by attending regular Alcoholics Anonymous meetings, going to church groups, and seeing a psychiatrist on a regular basis. Emma also testified that she believes Rashad, Sr. has a substance abuse problem, including prescription drug abuse, marijuana use, and potential alcohol issues. Testimony by several witnesses suggested that Rashad, Sr. had dealt drugs and illegally sold alcohol while in Barrow. Rashad, Sr. denies these allegations. Emma alleged that Rashad, Sr. committed two incidents of domestic violence, one in 2007 and one in 2009, and that the 2009 incident prompted her to take Rashad, Jr. and leave Washington. Rashad, Sr. disputes these claims; although the police were called in the 2009 incident, there is little objective evidence to substantiate either party's testimony.

3. On October 17, 2010, Rashad, Sr. called the police, reported that he no longer wished to serve as Emma's third-party custodian, and took Rashad, Jr. with him back to Washington. Emma was returned to state custody at that time and this custody case followed.[1]

---

[1] Alaska courts have jurisdiction for custody purposes because Rashad, Jr. lived in Alaska for the six months preceding the original filing of this case. *See Atkins* (continued...)

4.      A trial on interim custody was held over several days in December 2010 and January 2011.  At the December 28, 2010 hearing, the superior court entered an interim finding that at least two incidents of domestic violence had been perpetrated by Rashad, Sr.; the court later rescinded that finding and requested the child custody investigator's office to conduct a limited investigation into these allegations. On January 5, 2011, the superior court issued an Interim Custody Order awarding joint legal custody and equally shared physical custody.

5.      On January 25, 2011, the superior court received the Limited Custody Investigator's Report.  This report noted that "[e]ach parent compellingly reports the other parent is the perpetrator of domestic violence . . . [h]owever, there are no objective information sources to support either parent's claim."  The report concluded that "neither parent present[ed] as a more credible reporter than the other" and " 'it [was] not possible to conclude that either parent's claim against the other warrants application' of the [statutory] rebuttable presumption that a parent who had committed serious or multiple incidents of domestic violence would not receive custody."  The report recommended that each parent complete a batterer's intervention course.  Because Charles Hopson had previously been convicted for sexual abuse of a minor and, pursuant to Alaska law, is not allowed to be alone with Rashad, Jr., the report also addressed whether Charles Hopson posed a risk to Rashad, Jr.  The report noted that there was no evidence that Charles

---

[1]     (...continued)
*v. Vigil*, 59 P.3d 255, 257 (Alaska 2002).  However, Alaska courts do not have jurisdiction for child support purposes because the State of Washington entered an administrative order delineating the parties' child support obligations on March 16, 2010. *See State, Child Support Enforcement Div. v. Bromley*, 987 P.2d 183, 188-89 (Alaska 1999); AS 25.25.205; *see also* 42 U.S.C. § 666(f) (2006) (requiring "each State must have in effect the Uniform Interstate Family Support Act").

Hopson posed such a risk and there was "no indication of any ongoing or current problem" regarding domestic violence between Charles and Adeline Hopson.

6. The superior court held a two-day hearing on February 11 and 15, 2011, to determine a final custody order, which the court noted could be amended at a later date if there was a substantial change in circumstances. Emma was not available as a caregiver at this time because she was incarcerated after her probation revocation, but the court acknowledged she would be released in Fall 2011. Charles and Adeline Hopson formally intervened in the case to litigate custody and placement. Kathleen Hart, Rashad, Sr.'s mother, also intervened but clarified at the February 15, 2011 hearing that she had done so to support her son and did not wish to be considered as an alternative placement for Rashad, Jr.

7. The superior court issued its final custody order on February 26, 2011, granting the parents joint legal custody, but awarding sole physical custody to Rashad, Sr., subject to the visitation rights of the Hopsons. The superior court specifically provided that the Hopsons would receive one six-week block of visitation with Rashad, Jr. each summer, provided they give Rashad, Sr. notice of when they will exercise these rights and pay all expenses. The court also noted that Emma may file for a modification of the order upon her release from jail and after a demonstrated period of sobriety. The court ordered both parents to be assessed for "domestic violence/batterer's intervention treatment" and complete any recommended treatment, but did not enter a finding of domestic violence due to its concerns regarding the credibility of both parents.

8. The Hopsons now appeal. They argue that the superior court erred in concluding that Rashad, Sr. was an adequate placement. They also argue that it was proved that Rashad, Sr. was engaged in criminal activity outside of Barrow. They also allege that the superior court abused its discretion in limiting the relevance of its finding that Rashad, Sr. had illegally sold drugs and alcohol in Barrow, and by entering a finding

that domestic violence had occurred and later rescinding that finding.[2] Rashad, Sr. denies any involvement in criminal activities and asserts that he is an adequate caretaker for his son. Because we do not believe the superior court abused its discretion or clearly erred in its factual findings, we affirm its decision.

9.       Alaska Statute 25.24.150(c) provides that "[t]he court shall determine custody in accordance with the best interests of the child." Generally, the superior court has broad discretion in child custody matters.[3] When third parties, such as grandparents, seek custody, however, they must do more than demonstrate that custody with them is in the best interests of the child:[4]

> [I]n order to overcome the parental preference a non-parent must show by clear and convincing evidence that the parent is unfit or that the welfare of the child requires the child to be in the custody of the non-parent. One element of the welfare of the child requirement is that the non-parent must show that the child would suffer clear detriment if placed in the custody of the parent.[5]

10.      We will not reverse a custody determination "unless we are 'convinced that the trial court abused its discretion or that its controlling factual findings are clearly

---

**2**       The Hopsons also argued that the superior court abused its discretion in failing to consider Rashad, Sr.'s financial ability to provide for his son. This issue is inadequately briefed, however, so we decline to address it here. *See Sengul v. C.M.S. Franklin, Inc.*, 265 P.3d 320, 330 (Alaska 2011) (citing *Jurgens v. City of North Pole*, 153 P.3d 321, 326 (Alaska 2007)) (appellant abandons issues that are inadequately briefed).

**3**       *Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010).

**4**       *Evans v. McTaggart*, 88 P.3d 1078, 1084-85 (Alaska 2004) .

**5**       *Id*. at 1085.

erroneous.' "[6] An abuse of discretion "occurs when 'the trial court considers improper factors, fails to consider statutorily mandated factors, or gives too much weight to some factors.' "[7] Findings of fact will not be set aside unless clearly erroneous. A finding is clearly erroneous if "a review of the record leaves us 'with the definite and firm conviction that the superior court has made a mistake.' "[8] "We do not 'readily second guess a trial court's custody determination because it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.' "[9]

11. The superior court found by a preponderance of the evidence that Rashad, Sr. had illegally sold both alcohol and ecstasy while in Barrow. The superior court also found:

> There is no proof that Rashad Hart, Sr. engages in such [drug-related] activities while in Des Moines, Washington. Therefore, the evidence during the hearing that a child could be harmed by living in a home in which illegal activities are occurring has very limited relevance to a determination of the suitability of the father's home in Washington State.

12. The Hopsons claim this finding is "clearly erroneous" as it "is axiomatic that if the Court found that [Rashad, Sr.] trafficked in illegal alcohol and ecstasy then he engaged in criminal activities in two different places." Although they acknowledge that they "were unable to find any witnesses to testify directly regarding [Rashad, Sr.'s]

---

[6] *Williams*, 243 P.3d at 1000 (quoting *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008)).

[7] *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011) (quoting *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991)).

[8] *Id*. (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207-08 (Alaska 2000)); Alaska R. Civ. P. 52(a).

[9] *Williams*, 243 P.3d at 1000 (quoting *Michele M.*, 177 P.3d at 834).

behavior 2000 miles away," they claim that the testimony suggesting that Rashad, Sr. had transported drugs to Barrow indicates he necessarily engaged in drug activity while in Washington, his "base of operations." The Hopsons also contend that Rashad, Sr.'s unemployment since 2009 leads to an inference that he was supporting his income with illicit activities. The Hopsons argue the superior court abused its discretion by limiting the relevance of this evidence "without any supporting evidence" or "counter evidence other than [Rashad, Sr.'s] testimony which the Court itself found to be further eroded by his firm denials in the face of multiple witnesses." They claim the court "completely ignores" the testimony of its expert, and it ignored the fact that Rashad, Jr. was in the household with Rashad, Sr. when he was dealing drugs in Barrow, which shows that Rashad, Sr. will "engage in felony activity, to the detriment of his child, while [the] child is in his care."

13. The superior court was presented with little if any evidence of Rashad, Sr.'s activities while in Washington. Emma testified to her suspicions of Rashad, Sr.'s prescription drug and marijuana abuse, but Rashad, Sr. denied these claims. As the superior court noted, there were problems regarding the credibility of both parties and "no corroborating evidence to back up the allegations." The superior court made a factual finding that Rashad, Sr. dealt drugs while in Barrow, but it also clarified this conclusion was not a finding of criminal guilt. We interpret these seemingly contrary findings as a conclusion that this behavior was not part of Rashad, Sr.'s routine lifestyle in Washington. Thus, since the superior court found that any such behavior was isolated to Barrow, it limited the relevance of this factual finding and declined to give it substantial weight in its ultimate custody determination. This finding is not clearly

erroneous, nor does it amount to an abuse of discretion, especially given the fact that it is not our role to judge witness credibility or weigh conflicting evidence.[10]

14.     At the December 21, 2010 hearing, the superior court stated, "I am finding Ms. Hopson's testimony to be credible that [Rashad, Sr.] was the primary aggressor." Rashad, Sr. disputed this conclusion and at the December 28, 2010 hearing, the superior court referenced its earlier decision as an "interim finding." Also at the December 28 hearing, a representative from the child custody investigator's office explained that the office would not be conducting an investigation because "when there's been a showing [of domestic violence,] we don't believe it's a good use of the resource." The superior court became concerned that its finding would be based only on the testimony of Rashad, Sr. and Emma, and decided it was "in Rashad Hart, Jr.'s best interest to have the domestic violence issue investigated." Thus, the superior court "rescind[ed] the finding" of domestic violence because "there are issues of credibility on both sides in this case. . . . [t]hese issues are not clear . . . [and] at least so far no one has presented any collateral information." The court then ordered a limited custody investigation to explore the allegations of abuse. The custody investigator's report was submitted to the court on January 25, 2011; it noted each parent's credibility issues and determined it was not possible to conclude that either parent's allegations warranted the application of the rebuttable presumption against custody if a parent has committed multiple acts of domestic violence.[11] The superior court incorporated these findings into its final custody order, concluding that domestic violence by either parent had "not been proven at this time."

---

[10]     *Id.*

[11]     *See* AS 25.24.150(g) and (h).

15. The Hopsons argue that it was improper for the superior court to rescind its finding when no further evidence was admitted regarding domestic violence and the only new information presented was that the custody investigator would not conduct an investigation if a finding of domestic violence had already been entered. They maintain that it was an abuse of discretion for the superior court to "change[] its decision in order to preserve the investigation," instead of adhering to its original decision that was based on the credibility of the witnesses presented. The Hopsons claim that the fact that no investigation would occur had no relevance and "no bearing on the truth of the matter being decided."

16. The superior court did not abuse its discretion by ordering a limited custody investigation to determine whether the statutory rebuttable presumption raised by multiple incidents of domestic violence should apply in this case. The court repeatedly noted its concerns with the credibility of both Emma's and Rashad, Sr.'s testimony, and the limited corroborating evidence presented by the parties made this determination especially difficult. As Rashad, Sr. points out, this presumption carries heavy consequences and, based on the conflicting testimony presented, the court made a sound decision to have the custody investigator conduct an in-depth review of these claims. The court referred to its initial determination as an "interim" finding, which suggests that a final determination regarding this factor had not been entered. A court is free to amend its initial findings and impressions as more evidence is presented and that is exactly what happened here; there was no impropriety in the court's decision to order a more complete investigation of these allegations of abuse.

17. For the reasons stated above, we AFFIRM the decision of the superior court.

STOWERS, Justice, dissenting.

I respectfully disagree with the court's conclusion that the superior court did not clearly err in finding that Rashad, Sr.'s drug-related activities were limited to Barrow. The superior court found that Rashad, Sr. illegally sold both alcohol and the hallucinogenic drug ecstacy while in Barrow. Rashad, Jr. resided with his father while in Barrow. It follows that Rashad, Sr. illegally dealt drugs and sold alcohol while his son was in his custody. It also is the case that Rashad, Sr. did not manufacture or purchase the alcohol he sold in Barrow. It is also highly improbable that Rashad, Sr. manufactured the ecstacy in Barrow. It is far more probable that Rashad, Sr. acquired the alcohol and ecstacy he illegally sold in Barrow from another place — perhaps Anchorage, or perhaps his home state Washington.

Regardless where Rashad, Sr. acquired the alcohol and ecstacy, I think the distinction the superior court and this court attempt to draw is a distinction without a difference. The established fact is that Rashad, Sr. engaged in illegal sales of alcohol and ecstacy at a time when his son was in his care. Such illegal and dangerous conduct is plainly not in his son's best interests. These illegal and dangerous behaviors place the child at grave risk. There is nothing — neither evidence, reason, nor common sense — to suggest that Rashad, Sr. would not engage in similar illegal conduct in Washington.

I conclude that the grandparents established by clear and convincing evidence that Rashad, Sr. is unfit to have custody of Rashad, Jr. I would reverse the superior court's custody award.