**Larry James CARTER, Appellant,**

v.

**Christine Karen BRODRICK, Appellee.**

**No. S–4014.**

Supreme Court of Alaska.

Sept. 6, 1991.

William T. Ford, Anchorage, for appellant.

Douglas J. Marston, Richard D. Pennington & Associates, P.C., Anchorage, for appellee.

Before RABINOWITZ, C.J.; and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

This is an appeal of a superior court order denying Larry James Carter's motions to modify visitation and to appoint a guardian ad litem for his minor daughter, Carrie Lee Carter. Larry also appeals the superior court's award of full attorney's fees to Christine Karen Brodrick.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Larry and Christine were married on August 5, 1976. Christine has a son from a prior marriage, David Wesley Brodrick, born August 14, 1972. The parties have a daughter, Carrie Lee Carter, born March 21, 1977. They were divorced on March 17, 1980. Pursuant to the parties' agreement, the superior court ordered them to share equally in raising both children. The children were to reside with Christine during the school year and with Larry during the summer. Each parent was to have two days custody every two weeks during the other's period of custody.

The parties were unable to comply with their agreement, and Larry was able to exercise visitation with David only a few times. The superior court terminated Larry's visitation rights with David after Christine continually refused to follow the visitation schedule. Larry appealed the order terminating his visitation with David. This court reversed and remanded the case to the superior court for a determination of whether Larry stood in loco parentis to David. *Carter v. Brodrick*, 644 P.2d 850, 855 (Alaska 1982). The superior court eventually determined that he did not, and Larry never resumed visitation with David.

In the meantime, problems had developed between the parties over Carrie's visitation schedule. According to Christine, Larry refused to return Carrie after his 1980 summer visitation, until Christine threatened legal action. Larry again refused to return Carrie to Christine at the end of his 1981 summer visitation, until he was jailed

for refusing to do so. In May 1982 the superior court granted Christine's motion to modify the divorce decree. Christine was awarded "full and complete legal and physical custody" of Carrie, and Larry's visitation schedule was restricted.

In August 1982 Larry failed to return Carrie from a scheduled visitation. Christine's attorney discovered that Larry had quit his job, taken all of his and Carrie's personal belongings out of his apartment, and disappeared. Christine and her attorney made every effort to locate Carrie, but to no avail. In September 1982 Christine obtained a civil bench warrant, a felony warrant, and an order from the superior court for Carrie's immediate return and termination of Larry's visitation rights.

Larry and Carrie were located in Oak Harbor, Washington, in March 1985. Carrie was returned to Christine's custody the next day and Larry was arrested. Larry was convicted on a felony charge of custodial interference in the first degree and sentenced to five years with three years suspended. In June 1985 the superior court entered judgment against Larry for $9,300 in back child support plus attorney's fees and interest, and issued an order restraining Larry in perpetuity from ever contacting Christine, David Brodrick, or Carrie Carter.

Larry, incarcerated for fourteen and a half months, was released in July 1986. He returned to Oak Harbor after his release. While Larry was incarcerated he failed to answer a civil suit which Christine had brought against him. The superior court entered a default judgment in the amount of $1,175,704.26 in September 1986. Larry discharged that judgment and the June 1985 attorney's fee award in bankruptcy. He is now paying current child support plus $150 per month on the arrearages.

Larry moved back to Anchorage in June 1988. In 1990 he filed a Motion for Visitation and a Motion for Appointment of a Guardian Ad Litem with supporting affidavits. Christine opposed the motions. The superior court denied without a hearing the Motion for Visitation, stating that Larry

had failed to make a prima facie showing of substantial change in circumstances. The court also denied the Motion for Appointment of a Guardian Ad Litem and awarded Christine full attorney's fees for opposing the motions.

Larry appeals the denial of his motions for visitation and for appointment of a guardian ad litem, and the attorney's fee award.

## II. DID THE SUPERIOR COURT ERR IN DENYING LARRY'S MOTION FOR VISITATION?

■■■ A modification of visitation requires both a change in circumstances and that it be in the best interests of the child:

> An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the award is in the best interests of the child. If a parent opposes the modification of the award of custody or visitation with the child and the modification is granted, the court shall enter on the record its reasons for the modification.

AS 25.20.110(a).[1] The burden of showing changed circumstances is on the moving parent. *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985). The change of circumstances required to modify visitation is not as great as that required for a change in custody. *Hermosillo v. Hermosillo*, 797 P.2d 1206, 1209 (Alaska 1990).

■ An evidentiary hearing is not required whenever a parent moves for a change in custody or visitation. "[W]hile a trial court must consider all motions for a change in custody, it is not required to grant a hearing on the motion if it is plain that the facts alleged in the moving papers, even if established, would not warrant a change." *Deivert v. Oseira*, 628 P.2d 575, 578 (Alaska 1981) (court failed to consider motion where it did not address arguments made in motion). "[T]he court has discretion to deny a hearing where no showing

has been made of changed circumstances or of an alteration in the best interests of the child." *Id.* at 579.

■ In order to determine whether Larry has made a showing of changed circumstances, the court must bear in mind what the circumstances were when the visitation order was entered. The order terminating Larry's visitation rights was entered in September 1982, shortly after Larry disappeared with Carrie. The stated reasons for terminating Larry's visitation were the outstanding warrants against him and that it was in the child's best interests. The June 1985 restraining order which prohibited Larry in perpetuity from contacting Carrie was entered while Larry was incarcerated for custodial interference.

In his motion for visitation and supporting affidavits, Larry makes the following assertions:

1) that following his arrest, he was convicted and sentenced to five years;

2) that he served fourteen and a half months and was released in July 1986;

3) that he returned to Oak Harbor following his release, then moved back to Anchorage in June 1988;

4) that he is paying current child support plus arrearages;

5) that he is employed as a property manager;

6) that since his return to Anchorage, he has made no attempt to contact Carrie in contravention of the superior court's order;

7) that he has been seeing Dr. Al Collins (a psychologist) for six months and that he intends to continue seeing him;

8) that he knows it was wrong for him to take Carrie away from her mother; and

9) that he previously had a good relationship with Carrie and believes it is in her best interests to resume a visitation schedule.

We conclude that Larry made a prima facie showing that circumstances had

---

1. In 1990, following the superior court's denial of Larry's motion for visitation, the legislature added subsection (b) to AS 25.20.110, specifying

when a court may properly consider compliance with agreements concerning the child or child support orders. Ch. 130, § 2, SLA 1990.

changed since the orders of 1982 and 1985. Therefore the superior court abused its discretion by denying him an evidentiary hearing. Larry was a fugitive and a prisoner at the time the respective orders were entered. He had a history of disobeying court orders concerning visitation. The facts alleged in Larry's moving papers, if true, establish that he has served his sentence, he is now living in Anchorage and gainfully employed, he has been complying with the court's orders since being released from prison in 1986, he admits to the wrongfulness of his past conduct, and he is taking affirmative steps to rehabilitate himself by seeing a psychologist.

Larry has expressed willingness to abide by any conditions the court may place on him in exercising visitation in the future.[2] This in itself is a significant circumstance because it was his refusal to comply with the court-ordered visitation which Christine asserts caused the superior court to terminate his visitation rights in the first place.

Admittedly Larry's past conduct was reprehensible. However he maintains that he and Carrie had a close relationship in the past. Without affording Larry an evidentiary hearing, he has no opportunity to show that resumption of visitation is in Carrie's best interests.

## III. DID THE TRIAL COURT ERR IN DENYING LARRY'S MOTION FOR APPOINTMENT OF A GUARDIAN AD LITEM?

Alaska Statute 25.24.310(c) directs the superior court to appoint a guardian ad litem when representation of a minor's best interests would serve the welfare of the minor. AS 25.24.310(c) provides in relevant part:

> [T]he court may, upon the motion of either party or upon its own motion, appoint an attorney or other person or the office of public advocacy to provide guardian ad litem services to a minor in any legal proceedings involving the minor's welfare. *The court shall require a guardian ad litem when*, in the opinion of the court, *representation of the minor's best interests*, to be distinguished from preferences, *would serve the welfare of the minor.*

(Emphasis added).

In many custody cases appointment of a guardian ad litem is not needed, and in those cases it is not compelled by statute, the court rules, or this court's decisions. *Veazey v. Veazey*, 560 P.2d 382, 385 (Alaska 1977). "No two custody cases are alike. Of necessity, the trial court has a considerable amount of discretion in making this decision." *Id.*

"The decision whether to appoint a guardian ad litem ... depend[s] in large measure on the age of the children and the nature of the claim being advanced by the parent or parents." *Lacy v. Lacy*, 553 P.2d 928, 930 (Alaska 1976). *Lacy* held that the superior court did not abuse its discretion in failing to appoint a guardian ad litem where both parties expressed the view that the father and his counsel were capable of

---

**2.** This disposes of Christine's claim that the issue of supervised visitation is not properly before this court. Larry sought to reinstate visitation under whatever conditions the superior court deemed proper. Supervision is simply a condition of visitation.

Christine makes a number of other assertions which have no basis in the record or in law. For example, she accuses Larry of "consistently shirk[ing] his financial obligations" because he discharged the judgments against him in bankruptcy and his child support is in arrears. Given the fact that he had judgments against him for well over one million dollars, and there is no evidence that he had any assets with which to pay these judgments, he had little choice but to declare bankruptcy. Furthermore, Christine does not deny that Larry has been paying incre-

mental child support arrearages. Christine is simply wrong where she states that Larry failed to acknowledge any wrongdoing in kidnapping Carrie. Larry specifically acknowledged his wrongdoing in his affidavit filed with his motion for visitation. Christine also claims that Larry still leads a "transient" lifestyle, citing his move to Anchorage and the fact that he has had two jobs since arriving. However, Larry explained that he worked for Safeway after arriving in Anchorage, then got a job as a property manager after obtaining a real estate license. These moves indicate increasing job stability, not a "transient" lifestyle. Christine argues that Larry presented no evidence he was in fact employed. This is a specious argument given the fact that Larry was denied a hearing at which to present his evidence.

representing the children's interests and neither party could suggest a specific benefit which the guardian would bring to the custody modification proceedings.

 The role of a guardian ad litem is to be "in every sense the child's attorney." *Veazey,* 560 P.2d at 387. The guardian ad litem has the responsibility to zealously represent the child, and should normally conduct home visits and a private interview with the child.

> When he feels it necessary, he should consult with non-legal experts—psychologists, social workers, physicians, school officials, and others. He should exercise his best professional judgment on what disposition would further the best interests of the child, his client, and at the hearing vigorously advocate that position before the court. With this responsibility necessarily goes the power to conduct discovery, to subpoena witnesses and present their testimony, to cross-examine witnesses called by other parties, and to argue his position to the court.

*Id.* In a number of cases, the attorneys for the parents cannot assert the interests of the child without creating a conflict of interest. *Id.* at 388. "The court's initial decision that a guardian ad litem is necessary in a particular case contains an implicit finding that the counsel for the parents cannot alone serve the child's interests before the court." *Id.* at 389.

Larry argued in his motion for appointment of a guardian ad litem that there may be substantial pressure on Carrie because he expects Christine to adamantly oppose resumption of visitation due to the kidnapping. If the court had been correct in concluding that Larry had not made out a prima facie case for resumption of visitation, then there was no need to appoint an advocate for the child's interests. Christine's only argument against appointment of a guardian ad litem is that it is unnecessary because Larry has failed to state what purpose a guardian would serve.

 In view of this court's decision on Larry's claim of changed circumstances,

the superior court should revisit the guardian ad litem issue.[3] The superior court based its decision to deny the motion on its erroneous denial of the visitation motion.

## IV. CONCLUSION

The superior court's order denying Larry's motions without a hearing is REVERSED and the case is REMANDED to the superior court for further proceedings consistent with this opinion.

---

**3.** For the same reasons, the superior court's award of attorney's fees must be vacated.