Gustavo **ACEVEDO**, Appellant,

v.

Denise **LIBERTY**, Appellee.

No. S–8179.

Supreme Court of Alaska.

April 10, 1998.

Gustavo Acevedo, pro se, Bethel, Appellant.

Christopher R. Cooke, Hedland, Brennan, Heideman & Cooke, Bethel, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

### OPINION

FABE, Justice.

### I. INTRODUCTION

■ Gustavo Acevedo appeals the superior court's denial of his motion to modify visitation. The court denied Acevedo's motion without a hearing, despite his presentation of documentary evidence that his ex-wife and daughter had moved from Bethel to Fairbanks, thereby affecting his ability to exercise visitation under the supervised visitation schedule mandated by the court's order. We conclude that Acevedo made a sufficient showing of change in circumstances to warrant an evidentiary hearing. We therefore remand to the superior court.

### II. FACTS AND PROCEEDINGS

Gustavo Acevedo and Denise Liberty have one child, Amanda Denise Ardean Acevedo, who was born in 1989. In 1990 Liberty filed for divorce and sole custody of Amanda. The parties entered into a settlement agreement that provided Liberty with "primary custody" of Amanda. Under the agreement, Acevedo was to have "reasonable access to and visitation with the child according to a visitation schedule to be established by the parties." The superior court approved the agreement.

Following the divorce, Acevedo and Liberty agreed to a specific visitation schedule that allowed Acevedo to visit with Amanda three afternoons per week under the supervision of the Tundra Women's Coalition. Liberty suspended these afternoon visits in June 1992, however, "because of [Acevedo's] continued threats and violence" towards her and Amanda. Liberty then attempted to reinitiate supervised visitation between Amanda and Acevedo but received no response to her proposal. Acevedo did not contact Amanda until March 1994 after he filed a motion in the superior court to establish specific visitation. In May 1994 the superior court entered a detailed custody order providing Acevedo with supervised visitation three afternoons or evenings a week and disallowing overnight visitation.[1]

After Liberty and Amanda moved from Bethel to Fairbanks in January 1996, Acevedo requested that the court lift the supervision requirement. The court denied this motion without explanation. In April 1997 Acevedo again moved to modify visitation. In his motion, he sought unsupervised and

---

1. The order granted Acevedo visitation on Tuesday and Thursday evenings from 5:00 p.m. to 8:00 p.m. and on Saturday afternoons. The order also permitted Acevedo to visit with Amanda on alternating birthdays and major holidays and named the individuals who were to supervise the visits. This schedule has remained in effect through the present appeal.

The superior court based this visitation order upon the following findings: (1) a June 1992 altercation between the parties was indicative of the continuing distrust between them; (2) Acevedo ceased contact with his daughter for nearly two years without explanation; (3) Acevedo had an anger control problem that affected Liberty and Amanda; and (4) Acevedo shared an apartment with three male roommates—a situation not conducive to overnights with his daughter.

overnight visitation, as well as a reduction in child support in order to pay for travel expenses to Fairbanks. He alleged a change in circumstances based primarily upon Liberty's move to Fairbanks, his difficulties coordinating supervision in accordance with the court's visitation order, and changes in his lifestyle.

The superior court denied Acevedo's motion for modification of visitation without a hearing, finding that:

Acevedo, however, has not provided any evidence of his present living circumstances; he has not addressed his prior threats to abscond with Amanda. Finally, Acevedo has not met the burden of showing the court a substantial change in circumstance and that the proposed change in custody or visitation is in Amanda's best interest.

Acevedo appeals.

III. *DISCUSSION*

A. *Standard of Review*

■ Reversal of a trial court's order concerning modification of visitation or custody is appropriate

only if the record shows an abuse of discretion or if controlling factual findings are clearly erroneous. Abuse of discretion in child custody cases may occur when, in reaching its decision, the trial court considers improper factors, fails to consider statutorily mandated factors, or gives too much weight to some factors.

*A.H. v. W.P.*, 896 P.2d 240, 244 (Alaska 1995) (citations and quotations omitted).

B. *Did the Superior Court Abuse Its Discretion by Denying Acevedo's Motion to Modify Visitation without First Conducting an Evidentiary Hearing?*

■ Modification of a visitation order requires a showing that there has been a change in circumstances and that the modification will be in the best interests of the

child. *See* AS 25.20.110(a); *see also Carter v. Brodrick*, 816 P.2d 202, 204 (Alaska 1991). The moving party bears the burden of demonstrating changed circumstances. *See Carter*, 816 P.2d at 204 (citing *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985)). "The change in circumstances required for modification of visitation rights ... need not rise to the level sufficient to warrant a change of custody." *Hermosillo v. Hermosillo*, 797 P.2d 1206, 1209 (Alaska 1990). If the moving party satisfies the threshold requirement of establishing a change in circumstances, that party is entitled to an evidentiary hearing after which the court will determine whether the proposed changes in the visitation are in the best interests of the child. *See A.H.*, 896 P.2d at 244 (citation omitted).

Acevedo argues that the court erred in finding that he had failed to show a substantial change in circumstances that would have entitled him to an evidentiary hearing to determine whether modification of the visitation order was in Amanda's best interests. He contends that Liberty's move from Bethel to Fairbanks, coupled with the restrictive nature of the supervised visitation schedule, constituted a change in circumstances because the court-ordered schedule of three supervised afternoon or evening visits a week was no longer practical. He also claims that his living situation has changed [2] and that he has successfully completed an anger management program.[3]

■ Generally, "[e]xisting visitation arrangements assume that the parents will continue to live in the same geographic area, and thus will require modification and change when distances increase between the child and the noncustodial parent." *House v. House*, 779 P.2d 1204, 1207 (Alaska 1989). We have held that a custodial parent's decision to move out-of-state amounts to a change in circumstances as a matter of law. *See id.* at 1207–08. A custodial parent's in-state move of a considerable distance "cer-

---

**2.** Acevedo apparently lives with his girlfriend instead of with three male roommates, the situation that the superior court originally found incompatible with overnight visitation.

**3.** Rehabilitation is one factor that the courts have considered when examining a change in circumstances. *See, e.g., Carter v. Brodrick*, 816 P.2d 202, 205 (Alaska 1991) (psychological treatment); *Nichols v. Mandelin*, 790 P.2d 1367, 1372 (Alaska 1990) (sustained alcoholism treatment).

tainly ... presents a factor that the court should include in its changed circumstances analysis." *Long v. Long,* 816 P.2d 145, 152 (Alaska 1991). In *Long,* we considered whether "in the aggregate" a variety of factors including the custodial parent's impending move from Anchorage to Juneau could reasonably constitute a change in circumstances.[4] *Id.* at 153; *cf. Nichols v. Mandelin,* 790 P.2d 1367, 1372 n. 15 (Alaska 1990) (addressing a variety of factors in determining whether longstanding changes in noncustodial parent's lifestyle had satisfied the change in circumstances test).

In the present case, Liberty's move from Bethel to Fairbanks makes it virtually impossible for Acevedo to visit Amanda during the times specified in the visitation order. Visitation is further complicated by the need to arrange supervision in accordance with the order. Viewing all of the factors raised by Acevedo in the aggregate, we conclude that he has made a sufficient showing of changed circumstances and that the superior court abused its discretion in denying him an evidentiary hearing. We therefore reverse and remand to the superior court to determine whether modifying the visitation order would be in Amanda's best interests.[5]

## IV. *CONCLUSION*

We REVERSE and REMAND to the superior court for proceedings consistent with this opinion.

---

4. In *Long,* we examined not only the six-hundred-mile move to Juneau, but also the impact of the parents' worsening relationship on the children, the parents' recent remarriages, and a change in custody of one of the children. *See Long v. Long,* 816 P.2d 145, 150–53 (Alaska 1991).

5. If the superior court finds on remand that it is in Amanda's best interests to continue the requirement of supervised visitation, "the court should consider whether to order periodic reviews of the continuing need for the restriction and whether to establish criteria which might signal the end to the need for the restriction." *J.F.E. v. J.A.S.,* 930 P.2d 409, 414 (Alaska 1996).