Leota BAGBY, Appellant,

v.

Bryan BAGBY, Appellee.

No. S–13785.

Supreme Court of Alaska.

May 13, 2011.

Justin R. Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellant.

Bryan Bagby, pro se, Plymouth, California, Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

CHRISTEN, Justice.

### I. INTRODUCTION

Bryan and Leota Bagby were married in 1998 and divorced in 2008. They are the parents of one daughter. Prior to separation, the parties resided in Sitka but Leota moved to Anchorage soon after Bryan filed a complaint for divorce. After a bench trial, Bryan was awarded primary physical custody of the parties' daughter during the school year and Leota was awarded visitation during the summer and on alternating holidays. Bryan moved to Arizona after the custody trial. Leota filed a motion to modify custo-

dy, but the superior court denied the motion without holding a hearing. The superior court reasoned that Bryan's move to Arizona did not constitute a substantial change in circumstances because the original custody order contemplated that Leota's visitation would require long-distance travel between Sitka and Anchorage. Leota appeals. Because we have consistently held that an out-of-state move is a substantial change in circumstances as a matter of law, we reverse the superior court's order and remand for a hearing on Leota's motion to modify custody.

## II. FACTS AND PROCEEDINGS

Bryan Bagby and Leota Bagby were married on September 4, 1998 and are the parents of one daughter, Natalie.[1] In April 2007, Bryan filed for divorce and Leota moved from Sitka to Anchorage. The parties resolved some of their custody issues through a settlement agreement and others were resolved at a trial held October 17 and 19, 2007. The superior court determined that it was in Natalie's best interests for the parties to share legal custody but for Bryan to have physical custody during the school year. Leota was awarded visitation during the summer and on alternating holidays. The parties were ordered to equally share the cost of flights between Sitka and Anchorage to facilitate Leota's two visitation periods—summer and one holiday each year. Leota was also allowed limited additional holiday visitation at her own expense.[2]

Bryan moved to Arizona in October 2008. In December 2009 Leota filed a motion to modify custody. The superior court denied the motion to modify custody in an order that stated Leota "failed to demonstrate a change in circumstances entitling her to a hearing."

The superior court reasoned that Bryan's move to Arizona did not constitute a substantial change in circumstances because the parties lived in "geographically distant" locations when the original custody decision was made, and Leota raised no allegations that the move to Arizona would have an impact on her visitation schedule. The superior court also ruled that Leota did not demonstrate that the move would have an impact on Natalie's welfare.

Leota appeals.

## III. STANDARD OF REVIEW

We review de novo "[w]hether a moving party has made a prima facie showing sufficient to justify a custody or child support modification hearing."[3] "The parent moving for modification has the burden of proving a substantial change in circumstances as a threshold matter"[4] to obtain a hearing on whether the child's best interests require modification of custody. We will affirm a denial of a modification motion without a hearing "if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing."[5]

## IV. DISCUSSION

The superior court denied Leota's motion to modify custody without holding a hearing because it decided she "failed to demonstrate a change in circumstances entitling her to a hearing." Leota argues that Bryan's move to Arizona constitutes a substantial change in circumstance as a matter

1. A pseudonym is used to protect the identity of the parties' child.

2. Under the partial settlement agreement, Leota was allocated additional holiday time according to the following schedule:
   [Leota] is entitled to exercise additional holiday visitation during even numbered years the day after Christmas, December 26th until 2 days before school resumes, at her own expense. She may also visit with [Natalie] for the second half of her spring break during odd numbered years. [Leota] may also have [Natalie] for Thanksgiving on even numbered years

for a three day visit that is not to interfere with [Natalie's] schooling.

3. *Hunter v. Conwell*, 219 P.3d 191, 195 (Alaska 2009) (citing *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999)).

4. *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999) (citing *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991)).

5. *Id.* (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998)).

of law, and that the move requires a hearing to determine whether modification of custody is in Natalie's best interests. Leota's argument is supported by our case law.

In Alaska, modification of custody requires a showing that there has been a substantial change in circumstances since the last custody order was entered and that the modification is in the child's best interests.[6] The moving party bears the burden of demonstrating that a substantial change in circumstances has occurred.[7] If the moving party satisfies the threshold requirement of establishing a substantial change in circumstances, the superior court must hold an evidentiary hearing on the motion to determine whether the proposed change in custody is in the child's best interests.[8]

"We have held that 'a custodial parent's decision to move out-of-state [with the children] amounts to a [substantial] change in circumstances as a matter of law' "[9] and "the moving party is entitled to a hearing on a motion to modify custody as a matter of law based on a showing that the custodial parent has moved or intends to move [out-of-state]."[10]

After Leota's motion to modify custody was denied, she filed a motion for reconsideration. She again argued that Bryan's out-of-state move constituted a substantial change in circumstances and that she was entitled to a hearing. Her motion cited several Alaska cases that have established and reaffirmed this rule.[11] The superior court responded with an order acknowledging the Alaska cases cited in Leota's motion, but observing that each of the cases relied on *House v. House*.[12] The superior court distinguished *House* because that case involved a custody and visitation order that was put in place when the parties lived in the same geographic area, while Leota had moved to Anchorage by the time the superior court entered the custody order in this case. The superior court also noted that *House* was predicated on the children facing a "potentially disturbing and upsetting change in circumstances" because they would be "likely to have less frequent contact with the noncustodial parent who continue[d] to reside in the state." Concluding that "it was not simply the move out-of-state, but the negative impact upon the noncustodial parent's visitation" that was pivotal in *House*, the superior court denied Leota's motion for reconsideration. We are not persuaded that *House* is distinguishable.

■ Bryan and Leota lived several hundred miles apart when the superior court entered its custody order,[13] but many parents in Alaska have homes separated by long distances and we have not exempted the custody orders in those cases from the rule that a custodial parent's out-of-state move is a substantial change in circumstances as a matter of law.[14] And the many reasons for this rule apply whether or not the parents lived near each other when custody was initially determined. Because Alaska is geographically separated from the contiguous United States by a significant distance, an out-of-state move will typically mean that visitation will become more costly and more time-consuming. As a result, visitation may

---

6.  AS 25.20.110(a); *see also Misyura v. Misyura,* 244 P.3d 519, 521 (Alaska 2010); *Hunter,* 219 P.3d at 195–97.

7.  *Morino,* 970 P.2d at 428 (citing *Long,* 816 P.2d at 150).

8.  *See Acevedo v. Liberty,* 956 P.2d 455, 457 (Alaska 1998) (internal citation omitted).

9.  *Barrett v. Alguire,* 35 P.3d 1, 6 (Alaska 2001) (quoting *Acevedo,* 956 P.2d at 457).

10. *Id.*

11. *Hamilton v. Hamilton,* 42 P.3d 1107, 1115 (Alaska 2002) (citing *Moeller–Prokosch v. Pro-*

kosch, 27 P.3d 314, 316 (Alaska 2001); *House v. House,* 779 P.2d 1204, 1207 (Alaska 1989)); *Barrett,* 35 P.3d at 6 (quoting *Acevedo,* 956 P.2d at 457); *Pearson v. Pearson,* 5 P.3d 239, 242 (Alaska 2000) (citing *House,* 779 P.2d at 1207–08).

12. 779 P.2d 1204.

13. The distance between Sitka and Anchorage is over 600 miles by air.

14. We have articulated this holding in several cases. *See Hamilton,* 42 P.3d at 1115; *see also Barrett,* 35 P.3d at 6 (quoting *Acevedo,* 956 P.2d at 457); *Pearson,* 5 P.3d at 242 (citing *House,* 779 P.2d at 1207–08); *Long v. Long,* 816 P.2d 145, 152 (Alaska 1991) (citing *House,* 779 P.2d at 1207–08).

occur less frequently and there may be fewer opportunities for children to visit with extended family living in Alaska. We are also mindful that the finances of many families make it necessary for parents to consider allowing their children to travel unaccompanied at a fairly young age. That process is significantly more complicated if the travel extends outside of Alaska because such travel is lengthy, often requires changing planes, and often requires more than one flight—unlike some in-state travel. Out-of-state moves also necessarily mean that children will live in different homes and neighborhoods and will attend different schools. For children with special healthcare or educational needs, changes in healthcare providers, therapists, and teachers can be equally significant. All of these factors reinforce the well-established rule that an out-of-state move is a substantial change in circumstances as a matter of law.

Bryan's move to Arizona does not mean that custody will change, but it does require a hearing on Leota's motion to modify custody. A hearing will allow the superior court an opportunity to consider all of the relevant evidence and determine whether modification of custody is in Natalie's best interests.

## V. CONCLUSION

We REVERSE the superior court's determination that Bryan's move to Arizona did not constitute a substantial change in circumstances and REMAND for a hearing on the motion to modify custody.