NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FRANCISCO VELASCO III, | ) | |
| | ) | Supreme Court No. S-18506 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-20-05270 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JULIANA MEINDERS, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1999 – November 15, 2023 |
| | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Francisco Velasco III, pro se, Anchorage, Appellant. Notice of nonparticipation filed by Erin Welden, Law Offices of Blake Fulton Quackenbush, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

A couple agreed to share physical custody of their minor child following the dissolution of their marriage. They agreed that the father would have sole legal custody. The couple also reached an agreement to divide their marital estate, including

---

\* Entered under Alaska Appellate Rule 214.

the firearms that they had bought. The mother received a handgun while the father received the remaining guns.

The mother was later offered a job in another state. She filed a motion to modify custody, asking to be awarded primary physical custody and joint legal custody so that the child could move with her. She also requested that the court order the father to provide her with the serial numbers of the guns he had received; she stated that she was required to provide them to her prospective employer and that he had refused to provide them.

The superior court modified custody, granting the mother joint legal custody. It also ordered that if she moved, she would be awarded primary physical custody. And the court ordered the father to disclose the firearm serial numbers.

The father appeals the custody modification and the order to provide the firearm serial numbers to the mother. We affirm the superior court's decisions.

## II.    FACTS AND PROCEEDINGS
### A.    Facts

Francisco Velasco III and Juliana Meinders were married in 2006 and have a ten-year-old child. They dissolved their marriage in 2020. They agreed to share physical custody, and that Velasco would have sole legal custody of the child. They shared physical custody on a week-on, week-off schedule. The custody agreement provided that "[i]n the event a parent moves [the child] will remain with . . . Velasco . . . during the school year and will spend the summers with [Meinders]." They also agreed to split their marital debts and the guns bought during the marriage. Meinders kept a handgun and Velasco kept the remaining guns.

Meinders remarried shortly after the divorce and had another child. The parties' relationship worsened over time. In a telephone call in September 2020 that their child overheard, Meinders screamed at Velasco, telling him repeatedly to die. Around the same time Velasco left Alaska with the child to visit family without

notifying Meinders. Meinders later agreed that he could continue travelling with the child.

In November 2020 their child was bitten by a dog handled by Meinders's husband.[1] Meinders testified that she "immediately notified" Velasco and took the child to the hospital. The child's therapist later testified that the child had told her he entered his mother and stepfather's bedroom without permission in the middle of the night and climbed under the bed to retrieve an electronic device his mother had hidden. Although "the dog gave multiple warnings through growling," the child still reached for the device.

In May 2021, approximately six months after the dog bite, Velasco enrolled the child in therapy due to concerns related to the bite, as well as aggression toward women and anxiety. The therapist diagnosed the child with anxiety and an adjustment disorder. She also testified that the child engaged in "elaborate storytelling," or lying, and his lies often involved his parents. In March 2022 Velasco cancelled the child's future therapy appointments.

### B.     Proceedings

In December 2021 Meinders moved to modify custody after receiving a job offer in Florida. Velasco opposed and asked the court to award him primary physical custody if Meinders moved. The court granted Meinders interim sole legal custody "for the purpose of consenting to counseling/mental health therapy" because Velasco had cancelled the child's scheduled therapy appointments. It also scheduled an evidentiary hearing for April.

Meinders filed an expedited motion for clarification of the court's order, explaining that she and Velasco disagreed about the order's meaning. Meinders believed the order gave her sole legal authority to consent to mental health therapy or

---

[1]     According to Meinders, her husband worked for a "federal protective service" and was assigned the dog as part of his employment.

counseling for their child, but Velasco argued that both parents had to agree before the child could see a therapist. The court granted expedited consideration and clarified that Meinders had sole authority to consent to mental health treatment for the child until further order of the court.

### 1.     Evidentiary hearing and orders

Meinders called the child's therapist as a witness at the evidentiary hearing. After providing the court with a redacted copy of her notes,[2] the therapist testified that she was concerned about the child's "lack of emotional language" and "lying behavior." She testified that the child had admitted to "not being fully honest with" his father about the dog bite. She also testified that she mainly had contact with Meinders and that she was concerned about Velasco's abrupt cancellation of the child's therapy sessions because she did not want the child to feel abandoned.

Meinders testified after the therapist. She argued that it was in the child's best interests to award her primary physical custody because of her consistent routine and her greater involvement with his medical and academic needs. She also testified that she had agreed Velasco could have sole legal custody because he told her that their child would not retain military benefits, including health insurance, unless Velasco had legal custody. She described the changes she had made for their child's safety after the dog bite: the room where the dog was kept was locked at all times and the child was not allowed to interact with the dog unless he asked his stepfather for permission. Meinders stated that the child did not seem to fear the dog and "constantly ask[ed] permission to have [the dog] on his lap."

Meinders discussed her job offer and stated that it could require training that would force her to leave the child in the care of her family. She testified that she

---

[2]     At Meinders's request, the therapist provided the court with therapy notes after redacting information protected by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 C.F.R. §§ 160, 164 (1996).

would not take the job if she were not allowed to relocate with the child. Meinders also testified that she did not oppose their child's Catholic baptism as Velasco wanted, but that their child had "never expressed" a desire to be baptized.

Velasco testified last. He asserted that he was involved with the child's schooling and would "be open to a parent coordinator" to help facilitate communication with Meinders. Velasco did not dispute Meinders's claim that he had falsely claimed he needed to have legal custody to retain their child's military benefits.[3]

Velasco testified that it was important to him to share his Catholic faith and Mexican and Filipino heritage with the child. He claimed that the child wanted to be baptized and Meinders opposed it. Velasco also testified that he was concerned about the child's safety in Meinders's home with the dog and around Meinders's stepfather, who Velasco alleged was facing charges for sexual exploitation of a minor. The court allowed him to express his concerns but cautioned that testimony based on speculation would not receive "a lot of weight."

The parties filed written closing arguments. Velasco argued that Meinders had "not met her burden of establishing that there has been a sufficient change of circumstances for a modification of the current custody arrangement." He urged the court to grant him physical custody to "provide stability to [the child] as he would be able to remain in the house where he has lived since 2018, continue to attend the same school, and maintain his current social connections and activities in Alaska." Meinders argued that it was in the child's best interest to "reside with her as she has been the parent to primarily meet his medical and [other] needs." She also requested that the court order "Velasco to provide the serial numbers for the guns awarded to him in the divorce, remove [her] from any accounts she is on, and transfer any debts awarded to him that are still in her name."

---

[3] Velasco disputes this factual finding on appeal.

The court granted Meinders's motion to modify custody. It first found as a matter of law that Meinders's proposed move out of Alaska was a substantial change in circumstances and that the proposed move was legitimate. It then turned to the child's best interest, analyzing the factors in AS 25.24.150(c).[4] The court considered whether remaining in Alaska with Velsaco or moving to Florida with Meinders would better serve the child's interests.[5]

The court concluded that many factors favored neither parent. The court found that both parents were capable of meeting the child's needs, although they have different parenting styles.[6] The court noted that Meinders had a more traditional parent-child relationship, while Velasco referred to the child as "his best friend." The court did not consider the child's preferences, "given his youth and lack of evidence."[7] The court found that the child had a bond with each parent.[8]

The court found that Meinders was better able to meet the child's educational, medical, and behavioral health needs. The court reasoned that "Meinders [was] better able to separate her own emotional needs from [the child's] in parenting decisions," whereas "Velasco's decision to terminate the therapeutic relationship was less connected to [the child's] needs than to [] Velasco's needs." The court found no

---

[4] AS 25.24.150(c) (listing best interests factors for court's consideration in custody decisions).

[5] *See Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch III*), 99 P.3d 531, 535-36 (Alaska 2004) (describing symmetric analysis required when one parent wants to move out of state with child); *see Mengisteab v. Oates*, 425 P.3d 80, 86 (Alaska 2018) ("[T]he court must perform a 'symmetric' analysis" to determine "whether it would be in the best interests of the parties' [child] to be in the physical custody of [one parent] or [the other] in their respective locations." (second through fourth alterations in original) (internal quotations omitted)).

[6] *See* AS 25.24.150(c)(1)-(2).

[7] *See* AS 25.24.150(c)(3).

[8] *See* AS 25.24.150(c)(4).

evidence of domestic violence,[9] child neglect, child abuse, or substance abuse and did not consider these factors in its decision.[10]

The court based its decision on two factors it determined were the most significant. Due to the child's anxiety and adjustment disorder, the court found that promoting stability was a significant factor.[11] The court found that staying with Velasco would promote stability, but if Meinders moved away, disrupting his relationship with her and his baby brother would undermine his stability. The court also found that fostering a relationship with the other parent was "very significant in relocation cases."[12] The court found that Meinders was more willing to facilitate a relationship between the child and Velasco than he was between Meinders and their child.

The court concluded that if Meinders relocated, it would be in the child's best interests to award her primary physical custody. The court also found, however, that if Meinders were required to be in training away from home for more than a month, then the child would remain with Velasco until Meinders had completed training.

The court granted Meinders joint legal custody regardless of whether she moved. It found that "Velasco obtained sole legal custody under false pretenses" and his decision to withdraw the child from therapy "contributes to the substantial change of circumstances." Finally, the court ordered Velasco to provide Meinders with the serial numbers of the guns as she requested.[13]

---

[9]  The court considered the parties' allegations of domestic violence, but concluded that the "testimony was too lacking in detail or specificity to allow the court to find that either party committed a crime involving domestic violence."

[10]  *See* AS 25.24.150(c)(7)-(8).

[11]  *See* AS 25.24.150(c)(5).

[12]  *See* AS 25.24.150(c)(6).

[13]  The court also ordered Velasco to complete the process of removing Meinders's name from accounts and debts that had been awarded to him in the property division.

### 2.     Motion for reconsideration

Velasco moved for reconsideration. He argued that Meinders "misrepresented material facts" and that "the court minimized [her] actions which . . . led to past and present negligence, present and impending danger, and mental injury" to the child. He also argued that the court did not have authority to order him to provide his guns' serial numbers to Meinders. The court denied reconsideration.

Velasco appeals.[14]

## III.   STANDARD OF REVIEW

"Trial courts have broad discretion in determining child custody. We will set aside the superior court's custody determination only if the court abused its discretion or if its findings of fact are clearly erroneous."[15] "We review the superior court's decision to admit or exclude evidence, including expert witness testimony, for an abuse of discretion."[16] The superior court abuses its discretion if it "consider[s] improper factors in making its custody determination, fails to consider statutorily mandated factors, or assign[s] disproportionate weight to particular factors while ignoring others."[17]

Best interests determinations are factual findings.[18] Factual findings are clearly erroneous when, based on the entire record, we are left "with a definite and firm conviction . . . that a mistake has been made, even though there may be evidence to

---

[14]     Velasco was represented in the superior court proceedings, but his attorney withdrew in August 2022. Meinders filed a notice of non-participation in this appeal.

[15]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

[16]     *Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 349 (Alaska 2012).

[17]     *Ebertz*, 113 P.3d at 646 (alterations in original).

[18]     *Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 930 (Alaska 2012).

support the finding."[19]  "An erroneous decision regarding admissibility will only be reversed 'if it affected the substantial rights of a party.' "[20]

## IV.   DISCUSSION

On appeal Velasco argues that the court abused its discretion by modifying custody and that the court violated his Second Amendment rights by ordering him to disclose the serial numbers of the guns he received in the property division.[21]

### A.   The Superior Court Did Not Abuse Its Discretion When It Weighed The Evidence.

Velasco argues that the court did not give proper weight to his testimony. He claims that Meinders lied and forced the child to lie about what happened when the child was bitten by the dog.  Velasco testified that "the dog latched on" and "bit [the child] in the . . . head" and that the child told him that Meinders "forced [him] to lie." But the court credited the therapist's testimony, which was corroborated by her notes, that the dog bit the child after he came into the room late at night and tried to take an electronic device.  And the court specifically noted that the therapist had concluded in her notes that the child "was afraid to tell his father (who has sued the federal agency that owns the dog) the truth about the bite."  Finally, the court observed that Velasco took an inconsistent approach to the child's lying:  he "agrees that fabulist and negative tales about him should not be believed because [the child] lies, but maintains that negative stories about Ms. Meinders should be believed."

---

[19]     *Ebertz*, 113 P.3d at 646 (quoting *Jenkins v. Handel*, 10 P.3d 586, 588 (Alaska 2000)).

[20]     *Barton*, 268 P.3d at 349 (quoting *Cartee v. Cartee*, 239 P.3d 707, 721 (Alaska 2010)).

[21]     Velasco also argues that his father's constitutional rights were violated because his father owns the guns, but Velasco lacks standing to bring this claim.  *See, e.g.*, *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009) (explaining that a litigant generally "lacks standing to assert the constitutional rights of another" (quoting *State ex rel. Dep'ts of Transp. & Labor v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 630 n.9 (Alaska 1989))).

We give "particular deference" to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, is better suited to judge the credibility of witnesses and to weigh conflicting evidence.[22] The court's observations about Velasco's credibility — even if it did not make specific credibility findings — make clear that it credited the therapist's testimony over his.

Velasco also claims that their child would not be safe around Meinders's stepfather, who he alleged was facing charges for sexual exploitation of a minor. Over Meinders's objection Velasco stated he was concerned and described what he believed were the events surrounding the alleged criminal charges. The court allowed him to "describ[e] his concerns," but warned him that if they were "based on speculation, then the Court wouldn't give them a lot of weight." Velasco did not introduce any evidence to support his beliefs about the alleged charges; his testimony was hearsay.[23] Because it was hearsay, the court properly declined to give weight to Velasco's beliefs about Meinders's stepfather when it made its custody decision.

## B. The Superior Court Was Not Biased Against Velasco.

Velasco seems to allege that the superior court discredited his testimony for improper reasons, perhaps based on his race, ethnicity, age, or status as a veteran. We have held that even when a litigant did not claim judicial bias in the superior court, the claim can be raised for the first time on appeal.[24] And "[w]e have repeatedly held that a party must demonstrate that the court formed an unfavorable opinion of the party

---

[22] *Ebertz*, 113 P.3d at 646 (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[23] Alaska R. Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[24] *See Greenway v. Heathcott*, 294 P.3d 1056, 1063 (Alaska 2013) (assuming that judicial bias raised for first time on appeal was properly before us).

from extrajudicial information and that bias cannot 'be inferred merely from adverse rulings.' "[25]

Velasco takes issue with certain statements he attributes to the superior court. He argues that the court's characterization of Meinders as the "more traditional parent" discounts his cultural background. We have held that a court may not "decide the custody issue on the basis of cultural assumptions which are not borne out by the record."[26] But the court's consideration of both parents' relationship with their child demonstrates that it did not base its decision on Velasco's cultural background. The court compared the therapist's testimony and Velasco's description of the child as "his best friend" with the relationship between Meinders and the child. The court observed that "[a] 'best friend' relationship with a child is generally not in their best interest because it requires a child to tend to the parent's emotional needs." The court found that "Meinders is better able to separate her own emotional needs from [the child's] in parenting decisions and has demonstrated this capacity through her engagement in [the child's] therapy and education." The court found that Meinders, who has been more active in attending to the child's educational, medical, and behavioral health needs, tended to the child's needs in a more traditional parental manner than Velasco.

In *Ward v. Urling*, we held that a father's "allegations of bias [were] simply another iteration of his own discontent with the court's substantive rulings," and rejected his argument that the judge was biased.[27] Velasco, like Ward, fails to show that the court's decision was the result of bias against him.

---

[25] *Downs v. Downs*, 440 P.3d 294, 299-300 (Alaska 2019) (quoting *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015)).

[26] *Pingree v. Cossette*, 424 P.3d 371, 383 (Alaska 2018) (quoting *Carle v. Carle*, 503 P.2d 1050, 1055 (Alaska 1972), *superseded by statute on other grounds*, ch. 63, § 30, SLA 1977, *as recognized in Deivert v. Oseira*, 628 P.2d 575, 579 (Alaska 1981)).

[27] 167 P.3d 48, 57-58 (Alaska 2007).

## C.    The Therapist's Testimony Was Admissible.

Velasco argues that the superior court erred by admitting the therapist's testimony. It is unclear whether he is arguing that the testimony from the child's therapist should have been excluded because she was not qualified as an expert as required by Alaska Rule of Evidence 702 or whether her testimony should have been excluded because she was an expert witness and did not provide documents to support the basis of her opinion as required by Alaska Rule of Evidence 703.

First, the therapist was not offered as an expert witness. Though she testified about her professional experience as a family therapist for "[o]ver five years," she primarily testified about her experience treating the child. She also provided Meinders's attorney with a copy of her notes, which was shared with Velasco and the court. The therapist was called by Meinders to testify about her observations and diagnoses of the child and Velasco's attitude and behavior in connection with the child's therapy.

Although the distinction between an expert witness and a fact witness is often blurred when professionals such as treating physicians are involved,[28] an expert's testimony based on actual experience is admissible regardless of the expert disclosure requirements of Rules of Evidence. The therapist acted as a hybrid witness. A hybrid witness may testify about the services provided and offer opinions closely related to those services.[29] Hybrid witnesses do not have to be treated as expert witnesses and are

---

[28]    *Cf. Miranda T. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 524 P.3d 1105, 1117 n.42 (Alaska 2023) (recognizing that treating physicians may testify both to expert observations and to opinions formed during treatment).

[29]    *See Pamiuqtuuq C. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-17677, 2020 WL 6940433, at *6 (Alaska Nov. 25, 2020) (concluding court abused its discretion where therapist acting as hybrid witness testified "beyond the scope of the services" provided "to render opinions about . . . children when they did not provide the children services").

not subject to the same requirements.[30]  Even if the therapist were an expert witness, the requirements for expert notice and reports do not apply to an expert that was not retained to provide trial testimony.[31]  The therapist was therefore not required to provide a report or supporting documents in advance of trial.

Velasco also argues that the superior court should not have credited the therapist's testimony because he believes the therapist abused Meinders's trust by revealing too much information about her to Velasco when therapy began.[32]  But the court rejected Velasco's claim after it concluded that he had "undermin[ed] his explanation."  And it noted that Velasco cancelled the child's therapy months after the alleged breach, "suggesting that it had little to do with concern about a breach of . . . trust and more to do with the pending litigation."  The court did not abuse its discretion by allowing the therapist to testify and by crediting her testimony.

## D.     The Superior Court Did Not Err In Its Best Interests Analysis.

Velasco argues that the court erred in its best interests determination, and that it improperly weighed three of the statutory best interest factors:  the continuity factor,[33] the willingness of each parent to foster a relationship with the other one,[34] and domestic violence.[35]

---

[30]     *See, e.g.*, *Thompson v. Cooper*, 290 P.3d 393, 399-400 (Alaska 2012) (concluding "treating physicians were experience-based experts" and not subject to reliability and relevance requirements under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*).

[31]     *See, e.g.*, *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 844 (Alaska 2003); Alaska R. Civ. P. 26(a)(2) ("Disclosure of Expert Testimony").

[32]     Meinders did not testify to any loss of trust with the therapist.

[33]     AS 25.24.150(c)(5).

[34]     AS 25.24.150(c)(6).

[35]     AS 25.24.150(c)(7).

A superior court may modify a custody award if it finds that there has been a substantial change of circumstances and modification is in the best interests of the child.[36] The burden is on the moving party to demonstrate a substantial change of circumstances.[37] Once a substantial change in circumstances is shown, the court must then consider the best interest factors listed in AS 25.24.150(c).[38]

"[A] custodial parent's decision to move out-of-state [with the children] amounts to a [substantial] change in circumstances as a matter of law."[39] When a parent moves out of Alaska, the superior court must use a two-step approach to determine whether moving or remaining in Alaska is in the child's best interest.[40] "The first step is to determine whether the planned move is 'legitimate,' which we have defined as 'not primarily motivated by a desire to make visitation . . . more difficult.' "[41] Then, courts must determine "what is in the best interests of the child in light of all relevant statutory best interests factors and the reasons for the relocation."[42]

Meinders's job required her to relocate to advance. The court properly concluded that if "Meinders moves out of state to accept new employment, this

---

[36] AS 25.20.110(a); *see Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005).

[37] *Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010).

[38] AS 25.20.110(g).

[39] *Bagby v. Bagby*, 250 P.3d 1127, 1129 (Alaska 2011) (second and third alterations in original) (quoting *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001)).

[40] *Mengisteab v. Oates*, 425 P.3d 80, 85-86 (Alaska 2018).

[41] *Id.* at 85 (quoting *Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch I*), 27 P.3d 314, 316 (Alaska 2001) (alteration in original)).

[42] *Id.* at 85-86.

constitutes a substantial change of circumstances as a matter of law."[43]  Velasco does not challenge this finding on appeal.

After a court finds that a parent's reason for moving out of state is legitimate, we require the court to conduct a "symmetric analysis" of the child's best interests.[44]  The court should consider not only the effect of separating the child from the nonmoving parent but also the "corresponding effect" of the moving parent leaving the child behind.[45]

Alaska Statute 25.24.150(c) lists nine factors for the court to consider when determining a child's best interests.  "A symmetrical analysis does not require detailed parallel findings on every best interests factor."[46]  The superior court also does not need to explicitly mention each factor, but "its findings 'must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved.' "[47]

The court made explicit findings for most of the best interests factors and found that many of them favored neither party.  It found that both parents were capable of meeting the child's needs and that the child loved both parents and both parents loved him.  Although the superior court is not required to weigh factors equally or make

---

[43]    The court added that there would not be a substantial change of circumstances that would warrant a modification of physical custody if Meinders did not relocate.

[44]    *Mengisteab*, 425 P.3d at 85-86 (explaining two-step approach for determining child's best interests in custody dispute where one parent plans to relocate out of state with child).

[45]    *Moeller-Prokosch III*, 99 P.3d at 535-36.

[46]    *Mengisteab*, 425 P.3d at 87.

[47]    *Jaymot v. Skillings-Donat*, 216 P.3d 534, 539-40 (Alaska 2009) (quoting *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1158 (Alaska 2008)).

explicit findings on all statutory factors,[48] its reasoning is clear for the three factors Velasco challenges on appeal.

The court considered "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."[49] Velasco claims that he "has been the foundation for his son throughout his life" and has cared for the child's "physical/mental well-being" and provided "clothing, food, and [a] safe environment."[50] He argues that the child "want[s] to live in Alaska where he has resided in his home . . . [and] attended the same school [for many years], has friends and family," and where he "is also able to participate in many Alaskan outdoor activities." During the evidentiary hearing Meinders stated that she would research schools and living environments to ensure the child has a smooth transition. The court found that "[t]he environment in both homes has been satisfactory."

The court found that the continuity and stability factor generally favored Velasco if Meinders moved out of state, though disrupting the child's relationship with his mother and baby brother would undermine that stability — "particularly given the degree to which . . . Meinders attends to [the child's] educational and behavioral health needs." But the court also noted that if the child moved with Meinders, staying with family members during her training period would not promote stability for the child. The court gave more weight to this factor "[g]iven [the child's] diagnoses of anxiety

---

[48]  *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010) ("Though a trial court cannot 'assign[] disproportionate weight to particular factors while ignoring others,' it has 'considerable discretion in determining the importance of each statutory factor in the context of a specific case' and is not required to weigh the factors equally." (alterations in original) (quoting *Barlow v. Thompson*, 221 P.3d 998, 1005 (Alaska 2009)).

[49]  AS 25.24.150(c)(5).

[50]  During the evidentiary hearing Velasco made various claims about Meinders abandoning the child. But Meinders denied these claims, and the parties have shared "50/50" physical custody since their divorce.

and adjustment disorder." Although the court did not explicitly mention the symmetric analysis, the court's discussion of the impact of staying in Alaska versus moving with Meinders and the court's adjustment of the custody award if Meinders's job required extensive training makes it clear that the court did consider it.

The court next addressed "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[51] The court considered the therapist's testimony that Velasco spoke negatively about Meinders in front of the child, but she had not observed Meinders do the same, as well as evidence of Velasco's "refusal to permit communication between [the child] and Ms. Meinders and her family members during his custodial time." At the evidentiary hearing, Meinders testified that Velasco "made it very clear that if [she] were to leave, that he would make no effort" to continue the child's relationships with her family members. Velasco also left the state with the child for several weeks to visit family without notifying Meinders.

The court found that this factor favored Meinders because she was "more likely to promote a close and continuing relationship between [the child] and [] Velasco than the inverse." The court noted that this factor is more important in relocation cases "where the custodial parent bears a heavy responsibility to promote and facilitate a relationship with the non-custodial parent."

Velasco argues that the court erred because it "overlooked" "abuse, abandonment, negligence, and a history of domestic violence" against the child. But the court did not find "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents."[52]

---

[51] AS 25.24.150(c)(6).

[52] AS 25.24.150(c)(7). "Alaska Statute 25.24.150(g) creates a rebuttable presumption that a parent with a history of domestic violence may not be awarded legal or physical custody." *Kristina B. v. Edward B.*, 329 P.3d 202, 207 (Alaska 2014).

The court specifically discussed the "telephone call in September 2020 [where] Ms. Meinders became extremely dysregulated regarding financial issues and screamed at Mr. Velasco, telling him repeatedly to die" and concluded that the child "was present during this event and it was harmful to him."[53] It also considered Velasco's testimony that Meinders hit him in the past and Meinders's testimony that Velasco struck her car during their separation. But the court concluded that the "testimony was too lacking in detail or specificity to allow the court to find that either party committed a crime involving domestic violence." The court also found that "[t]here was no evidence of child neglect, child abuse, or substance abuse affecting [the child] and these are thus not a factor in the court's decision."

The court's factual findings that Velasco challenges are not clearly erroneous.

## V. CONCLUSION

We AFFIRM the superior court's decisions.

---

[53]   The court considered this "outburst" in its analysis of Meinders's ability to promote a close and continuing relationship with Velasco.